## Missouri River Telegraph Company

### *v.*

## First National Bank of Sioux City.

| 74 | 217 |
|----|-----|
| 121 | 257 |
| 74 | 217 |
| 83a | 448 |
| 74 | 217 |
| e215 ¹ | 56 |

1.  Conflict of laws — *power to enforce penal laws not of this State.* The courts of this State cannot enforce the criminal or penal laws of another State, or of the United States.

2.  The courts of this State will not entertain jurisdiction in a suit by a corporation created and doing business in another State, against a National bank organized under the laws of the United States, for the recovery of a penalty under an act of congress for receiving interest over and above the rate allowed by the laws of the State where the bank is located and transacts its business.

3.  Jurisdiction — *of State courts.* The courts of this State derive all their powers from the constitution and laws of this State, and do not, nor can they derive any power from the laws of the United States or other source.

4.  Same — *power of congress to confer.* Under the constitution of the United States congress can not confer jurisdiction upon a State court, or any other court which it has not ordained and established.

5.  Same — *State courts derive solely from State authority.* The courts of this State have jurisdiction, under the power conferred by our constitution, over all persons and things within its borders, and when persons or corporations, without reference to where or when the latter are created, come into this State, they are within the jurisdiction of our courts, which is then exercised by virtue of such power, and not by virtue of any congressional action or federal grant of power.

6.  Our courts will exercise jurisdiction in suits by or against corporations, whether created by act of congress or by the laws of another State, and whether doing business in this or some other State, in all cases except where they will refuse to entertain jurisdiction in a suit between natural persons.

Appeal from the Superior Court of Cook county; the Hon. Joseph E. Gary, Judge, presiding.

Messrs. Bennett, Kretzinger & Veeder, for the appellant.

Messrs. Tenneys, Flower & Abercrombie, for the appellee.

Mr. Chief Justice Walker delivered the opinion of the Court:

It appears that appellee is a corporation organized under the banking law enacted by the congress of the United States, and is located in the State of Iowa; and appellant, who sues for the use of Percy and Daggitt, is also a foreign corporation, organized and transacting business under the law of Iowa. The first count of the declaration avers that appellee, in violation of the laws of congress, received from appellant interest over and above the rate allowed by the laws of Iowa, at divers times, the sum of five hundred dollars, whereby, under the act of congress appellee became and was liable to pay to appellant double that sum, amounting to one thousand dollars. The common counts were also added. To this declaration defendant filed a demurrer, which the court sustained, and rendered judgment for defendant, and this appeal is prosecuted.

It is urged in affirmance that the court below has no jurisdiction to try a cause of the character shown in the first count of the declaration; that it is for the recovery of a penalty imposed by the laws of another State, or of congress, or both, and inasmuch as courts never execute the criminal or penal laws of another State or government, that the rule would be violated to hold that this penal law may be executed by our courts. There can be no pretense that any law of this State has been violated, as it is averred that the transaction occurred beyond the limits of the jurisdiction of the courts in this State. And it is equally true that both the governments of the United States and Iowa are wholly independent of this State. They severally have all of the attributes of sovereignty essential to the enactment and enforcement of laws for the government of their citizens within the limits of their constitutions. And in accordance with long settled rules of law, this State cannot enforce their criminal or penal laws. See *Sherman* v. *Gassett,* 4 Gilm. 521. But the jurisdiction is claimed under the fifty-

seventh section of the act of congress to provide a national currency, etc. (13 Statutes at Large, p. 117), which provides that all suits, actions and proceedings arising under that act, may be had in the United States courts or in "any State, county or municipal court in the county or city in which said association is located, having jurisdiction in similar cases." It is manifest that this language confers no jurisdiction on any court in this State to try this case, for the obvious reason that the appellant's bank or association is not located in this State. The jurisdiction attempted to be conferred is only on the State courts, the county courts or municipal courts in the State in which the bank is situated. By the plain meaning of the language of this section, congress intended only to confer jurisdiction upon the State courts of Iowa, the county court of Woodbury county, and the municipal court of Sioux city, if they had jurisdiction of similar cases under the laws of that State. The effort to confer jurisdiction was not on such courts generally, but simply upon the courts in the jurisdiction in which the delinquent bank might be located. The language is so plain that it will not admit of construction. The clear and unequivocal meaning of the law would be violated to hold otherwise, and it is manifest that the Superior Court does not answer to the description of any one of the courts enumerated by the act, and hence congress neither intended to, nor did it confer jurisdiction in this case upon that court.

It is urged for reversal that our courts entertain jurisdiction in cases where these banks are parties either plaintiff or defendant, as we do with individuals, whether resident or non-resident. This is true, but the jurisdiction that our courts exercise in such cases results from the power conferred by our constitution and laws, and not by any means from acts of congress. All of their jurisdiction comes from that, and not from a foreign source. They are brought into being and exist alone by virtue of our organic law. And the same is true of the United States courts, as they derive all of their powers from the federal constitution. We presume no one has ever conceived the

novel idea that a State could, by legislative enactment, confer any power or jurisdiction on the federal courts or officers. Nor can it be imagined that any one would suppose that if such an effort were made, and the federal courts should refuse to exercise such jurisdiction, there is the least shadow of power by mandamus or otherwise to coerce obedience to the requirements of such a law.

If we could imagine that a law of that character could be passed, does any one believe that the federal courts would thus acquire the semblance even of authority to act thereby? Does any one doubt that all acts under such an enactment would be void? Does any one suppose that this State can rightfully confer judicial power on any other courts than those provided for and created under our fundamental law? Could our legislature confer judicial power on the courts of other States? Surely not, and if the effort were made and the law were acted under, all their proceedings in pursuance of such a requirement would be clearly void.

The first section of article four of our constitution provides that the judicial power of the State, except as otherwise therein provided, shall be vested in one Supreme Court, circuit courts, county courts, justices of the peace, police magistrates, and in such courts as may be created by law in cities and incorporated towns. This section has exhausted the judicial power of the people of the State. It is there fully disposed of, leaving no residuum. There is nothing in that article that can be tortured into authority to confer any of the judicial power of the State on courts of other States, or the federal courts, hence it would be palpably unconstitutional to enact such a law.

The first section, article three, of the federal constitution, provides that: "The judicial power of the United States shall be vested in one Supreme Court, and such other inferior courts as the congress may from time to time ordain and establish." This provision has disposed of the judicial power, and it is vested in such federal courts as have been ordained and established by congress; and under the express requirements of

that section of the federal constitution it must remain there as now distributed, until congress shall see proper to organize other courts to which a portion of that judicial power may be distributed. In the face of this clear and unmistakable dispo sition of all the judicial power of the general government, can it be reasonably insisted that congress may confer any of that power on courts they have not ordained or established? And it will, we apprehend, be contended by no one that the Superior Court of Cook county was ordained or established by an act of congress. Suppose the court below, on motion, had dismissed this suit,— to what federal court or officer would counsel have applied to compel it to take jurisdiction and proceed to hear the cause? It seems to us to be impossible to imagine where such federal power lies. If it exists it has, so far as we know, been unsuspected. The United States government, when created, was provided with all means necessary for the enact ment of laws, their adjudication and enforcement, and it was supposed that the power would be exercised by its own agency, consisting of its own officers, created and maintained for that purpose, and that it would not require the officers of the State governments to enforce its laws. See *Prigg* v. *Penn.* 16 Pet. 539. That case holds that whilst State officers cannot be com pelled to execute laws of congress, although such laws may empower them to do so, still, when such officers so act they are fully justified and their acts will be valid and binding. This may be true, but that fact by no means compels State officers or tribunals to enforce the laws of congress.

Our courts, under the powers conferred on them by our con stitution, have jurisdiction over all persons and things within the borders of the State. And when persons or corporations, without reference to when or where the latter are created, come into this State, they are within the jurisdiction of our courts. And it is by virtue of this power thus conferred that our courts exercise their jurisdiction, and not by virtue of congressional ac tion or federal grant of power. If either of these corporations were to sue in our courts for any matters, except such as those

in which the court would refuse to exercise its functions in favor of a natural person, our courts would take jurisdiction and proceed to trial and judgment. The law regards such bodies as persons, and extends to them the rights and privileges of natural persons, but no more or greater rights. It then follows that the court below decided correctly in sustaining the demurrer to the special count of the declaration.

But it was manifest error to sustain the demurrer to the common counts. They are in the most approved form. No objection to them has been suggested. It is true, that it is said that no account was filed under these counts. This court has held that such account is no part of the declaration, and we can hardly see how it ever became necessary to make such a decision, as any one at all conversant with the elementary principles of pleading must · see that it can form no part of the declaration.

We have examined the seventeenth section of the practice act (Laws 1871–2), and fail to see in what manner it has the slightest bearing on the question. It is true, that it refers to attachment suits, and provides that in such cases the plaintiff may be required to file his declaration at the first term, and the defendant have a trial at such term. How this can have the remotest connection with the question as to sustaining a demurrer to a common count in proper form, is beyond our comprehension. We must conclude that there is a wrong reference as printed in appellee's brief.

For the error indicated, in sustaining the demurrer to the common counts, the judgment must be reversed and the cause remanded.

*Judgment reversed.*