(No. 11584.—Judgment affirmed.)
MORRIS & CO., Plaintiff in Error, vs. THE INDUSTRIAL
BOARD OF ILLINOIS et al. Defendants in Error.

*Opinion filed June 20, 1918.*

1. WORKMEN'S COMPENSATION—*statements of a deceased employee as to how he was injured cannot be testified to.* In a proceeding under the Workmen's Compensation act to recover compensation for the death of an employee, the deceased employee's relatives and his physician cannot testify to statements made by him as to how he received the injury which resulted in his death.

2. CORONERS—*a coroner's inquest is not limited to deaths supposed to have resulted from violence.* The word "casualty," in the statute authorizing the coroner to hold an inquest over a dead body, is used in its ordinary meaning to indicate a fatal or serious accident, and the right to hold an inquest is not restricted to cases where the death is supposed to have resulted from violence or any undue means indicating the commission of a crime.

3. SAME—*when coroner's verdict is admissible in action under Workmen's Compensation act.* Where the circumstances justify holding an inquest over the body of a deceased employee and the coroner's verdict finds only such facts as the law authorizes and requires to be found the verdict is competent evidence in a proceeding to recover compensation for the death under the Workmen's Compensation act, regardless of whether or not the effect of the finding is to make a *prima facie* case for an award.

CARTWRIGHT, DUNN and COOKE, JJ., dissenting.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

M. W. BORDERS, NORMAN G. COLLINS, and WEST & ECKHART, for plaintiff in error.

MOSES, ROSENTHAL & KENNEDY, (S. SIDNEY STEIN, of counsel,) for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This was a proceeding instituted before the Industrial Board of Illinois by defendant in error Mrs. Michael Klein against Morris & Co., plaintiff in error, to recover compen-

sation under the provisions of the Workmen's Compensation law for the death of her husband, Michael Klein. A hearing was had before the arbitrator, who found against plaintiff in error and in favor of Mrs. Klein. On a review by the Industrial Board, further evidence being introduced, that board also found against plaintiff in error and in Mrs. Klein's favor. By writ of *certiorari* the circuit court reviewed the record and affirmed the Industrial Board's award in all particulars. The trial judge entered of record a certificate that the cause, in his opinion, was not one proper to be reviewed by the Supreme Court. Thereafter a writ of error was sued out of this court to review the proceedings of the trial court.

The deceased was a laborer employed by Morris & Co. at the Union Stock Yards, in Chicago, having been so employed for about seven months prior to his death. It was his work to clean the floors around the tanks in the meat-boiling room in the canning department, situated on the third floor. He worked at night. On the evening of April 11, 1915, he went to work about nine o'clock,—his regular time. The gang of which he was a member worked until 4:30 o'clock the following morning. It was the custom of each employee of that department, before going to work, to stop at the time office, from 125 to 150 feet from the foot of the stairway hereinafter referred to, and procure a numbered brass check by which the employee was designated. This check was retained in the employee's possession while he was on duty and was exhibited to the time-keeper when the latter made his rounds for the purpose of ascertaining what employees were at work. At the conclusion of their services in the morning the employees passed along the outside of the time office and deposited their checks in boxes or drawers provided therefor. Klein's check was No. 9209. The time-keeper testified that this check was taken out on April 11, some time before nine o'clock, and that when he examined the box receptacle for these

checks the following morning at 4:30 this check had not been returned. The evidence tends to show that it was put into the proper receptacle between 4:30 and 4:45 on the morning of April 12, at about the same time the checks of all the other members of the gang were turned in. No witness testified to seeing Klein after he quit work on the morning of April 12, and no one saw him deposit his check at the time office or leave the premises of plaintiff in error. From the third floor of the "old beef house" (in which the canning department was situated) there was on the outside of the building a stairway leading to the ground, about four feet wide and consisting of two flights. The upper flight descended some twelve feet to a landing about eight feet wide and four feet long. The lower flight descended from the second floor in the opposite direction, about fourteen feet to the ground. There were railings on both sides of the stairs and the stairs were in good condition and well lighted. The employees in the canning department ordinarily used these stairs in going to and from work. Plaintiff in error's plant is situated on the south side in Chicago, about 1000 feet from Forty-third street and Ashland avenue. The deceased, Klein, lived on the north side in Chicago at 1622 Vine street. In going home he took the street car at the corner of Forty-third street and Ashland avenue and rode north to North avenue and Ashland avenue, about seven miles. On North avenue he changed cars and rode to Vine street, somewhat more than a mile. Mrs. Klein testified that on the morning of April 12 her husband arrived at home about ten minutes after six, that being about his usual time to get home when he worked a full night; that when he came in his overcoat was dirty; that he called to her, and she opened the door and had to assist him in and assist in undressing him and putting him to bed; that he stated to her he "had fell—fell himself to death." A post-mortem examination disclosed that he had fractured ten ribs on the right side, and that one or more of the fractured

ribs had penetrated his lung, producing a condition known as emphysema. Shortly after his return home he was removed, on the advice of his physician, to a hospital, where he died April 13 as the result of the injuries in question.

There is no direct testimony by witnesses heard before the Industrial Board tending to show where and under what circumstances the injury was sustained. His wife, son-in-law and physician testified that he told them he had fallen down the stairway at plaintiff in error's plant, heretofore described, while leaving his work. After his death a coroner's inquest was held, and the coroner's jury returned the following verdict: "We find from the evidence that Michael Klein died at the Norwegian Deaconess Hospital from the effects of injuries received, and from the evidence presented, we, the jury, are of the opinion that said injuries resulted from a fall down a flight of stairs at Morris & Co.'s plant at the Union Stock Yards, as he was leaving his work on April 12, 1915, at about 5:30 A. M."

Counsel for plaintiff in error earnestly insist that there is no proper evidence in the record sustaining the finding of the Industrial Board. It is claimed the testimony of the wife, son-in-law and physician concerning the statements made to them by the deceased as to how the injury occurred are all hearsay and therefore incompetent. This position is sustained by *Chicago and Alton Railroad Co.* v. *Industrial Board,* 274 Ill. 336, and cases there cited.

Counsel for the defendant in error Mrs. Klein insist, however, that the finding of the Industrial Board was sustained and justified by the coroner's verdict, while counsel for the plaintiff in error vigorously argue that the coroner's verdict was not properly admitted in evidence. When the coroner of a county knows or is informed "that the dead body of any person is found or lying within his county, supposed to have come to his or her death by violence, casualty or any undue means," he shall take charge, summon a jury of six men of the neighborhood and inquire into the

cause and manner of the death. It is the duty of the jury to inquire how, in what manner and by whom or what the dead body came to its death, all facts concerning the same and all material circumstances related to or connected with the death, and make up and sign a verdict and deliver the same to the coroner, which verdict shall be entered in a record required to be supplied by the county for that purpose. If the verdict implicates anyone as the unlawful slayer of deceased or as an accessory thereto and such person is not in custody, the coroner shall apprehend and commit or cause to be apprehended and committed to jail such person, there to remain until discharged in due course of law. (Hurd's Stat. 1917, chap. 31.) It is made the duty of the coroner to inquire into the cause of death where it is supposed to have resulted from "casualty" as well as where it is supposed to have resulted from "violence" or "any undue means." Webster's New International Dictionary defines "casualty" to mean "chance, accident, contingency; also that which comes without design or without being foreseen; an accident." Mishap, misfortune, disaster, are given as synonyms. The Standard Dictionary defines "casualty" to mean "a fatal or serious accident; disaster; accidental death or disablement; that which occurs by chance." We must assume the word "casualty" was understandingly used by the legislature and was intended to be given its usual and ordinary meaning. If it had only been intended to authorize an inquest where it was supposed the death resulted from the commission of a crime it would have been unnecessary to add casualty to death by violence or any undue means, as those words were broad enough to cover any case where death was supposed to have resulted from the commission of a crime. Klein's death was found by the coroner's jury to have resulted from a casualty, viz., "a fall down a flight of stairs at Morris & Co.'s plant at the Union Stock Yards, as he was leaving his work on April 12, 1915, at about 5:30 A. M." The statute made it the duty of the coroner

to hold an inquest when informed that it was supposed Klein had come to his death by a casualty.

In *United States Life Ins. Co.* v. *Vocke,* 129 Ill. 557, the suit was to recover on a life insurance policy. There was a provision in the policy that if the insured should die by an act of self-destruction the policy should be void. An inquest had been held to determine in what manner the deceased came to his death. The coroner's jury found the deceased committed suicide by shooting himself while temporarily insane. The verdict was offered in evidence on the trial by the insurance company but was denied. On appeal this court held it was admissible and said : "We are satisfied, both upon principle and authority, that the coroner's inquisition was admissible in evidence. The inquisition was made by a public officer acting under the sanction of an official oath, in the discharge of a public duty enjoined upon him by the law, and when it is returned into court and is filed we see no reason why it should not be competent evidence tending to prove any matter properly before the coroner which appears upon the face of the inquisition. We do not hold that such evidence is conclusive, but only that it is competent evidence to be considered." This was quoted with approval in *Devine* v. *Brunswick-Balke-Collender Co.* 270 Ill. 504. That case has been repeatedly approved in subsequent decisions.

The verdict of the coroner's jury was held admissible as evidence in *Armour & Co.* v. *Industrial Board,* 273 Ill. 590. In that case Walter A. Fitzgerald was employed by Armour & Co. as a teamster, and about seven o'clock in the morning of March 13, 1914, and while in apparent good health, he started with his team from the plant of Armour & Co. with a load for delivery down-town and with directions to bring back a load from the Wabash freight house. He returned to the plant of Armour & Co. about 5 :30 in the evening and complained to his foreman that he was suffering. The foreman sent him with another employee to the

office of the physician of Armour & Co., who made a superficial examination and found Fitzgerald suffered from pain upon pressure being applied to the lumbar region. From the physician's office he was taken to his home. During the night he was sick at his stomach and subsequently developed pneumonia, from which he died March 20. In the opinion the court refers to the fact that there is no evidence tending to show in what manner deceased came to his death except the verdict of the coroner's jury. It is said it was not necessary to discuss the question whether the evidence showed the deceased received any injury arising out of his employment which resulted in his death because the verdict of a coroner's jury rendered upon an inquest upon the body of the deceased was introduced in evidence, which found that the deceased came to his death from traumatic pneumonia, and further stated: "We, the jury, are of the opinion that said traumatic pneumonia resulted from an injury received when he fell from an Armour & Co. wagon at the Wabash freight depot, located on Clark street between Polk and Taylor streets, on March 13, 1914, at about two o'clock P. M." The court held the verdict was competent evidence as to the cause of death and affirmed an award against Armour & Co.

It is difficult to distinguish the *Armour & Co. case* from this case. Here the inquest was for the purpose of determining the cause of the death of Klein,—that is, in what manner he came to his death,—and not for the purpose of fixing any liability upon anyone. The verdict does not purport to find or state that the negligence of Morris & Co. or anyone else caused the fall down the stairway by Klein from which death resulted. The inquisition found only the facts which the law made it the duty of the coroner's jury to find if the death resulted from a casualty. That the effect of the finding showed a *prima facie* case entitling Mrs. Klein to an award under the Workmen's Compensation act could not render the verdict incompetent for that reason.

(*Armour & Co.* v. *Industrial Board, supra.*)    The verdict of a coroner's jury as to the cause of death was held comtent evidence as tending to prove that fact in *Victor Chemical Works* v. *Industrial Board,* 274 Ill. 11, and *Ohio Building Safety Vault Co.* v. *Industrial Board,* 277 id. 96.

*Novitsky* v. *Knickerbocker Ice Co.* 276 Ill. 102, was a suit at law against the defendant for damages for negligently running over and causing the death of a child seven years old. A certified copy of the coroner's verdict was admitted in evidence on the trial. The verdict found the child's death was caused by being run over by one of defendant's ice wagons, and further found the accident would not have occurred but for the negligence of a railroad company mentioned blocking the street with cars and censured the railroad company. The court held it was not within the province of the jury to fix a liability on anyone for the death "except in so far as the finding required by the statute to be made may have such effect," and that the latter part of the verdict was mere surplusage and was incompetent and the verdict should not have been admitted as a whole.

In *Albaugh-Dover Co.* v. *Industrial Board,* 278 Ill. 179, the verdict of a coroner's jury that the death on January 11, 1916, from tuberculosis resulted from an injury sustained January 5, 1915, was held incompetent because the court said: "Hausknecht died under the care of a physician, of tuberculosis of long standing, and there was no supposition that he came to his death by violence, casualty or an undue means, so that the coroner was not authorized to hold any inquest over his body."

It is only in cases where the inquest is authorized to be held that the verdict of a coroner's jury is competent, and where the inquest is authorized and the verdict finds only the facts which the law authorizes and requires being found, it is, under the repeated decisions of this court, competent evidence. The verdict in this case complied with

those requirements as to the cause of death and there was no contrary proof offered.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*

CARTWRIGHT, DUNN and COOKE, JJ., dissenting:

The duties and powers of a coroner are defined by statute and he has no other duty or authority. When he is informed that the dead body of any person is found or lying within his county supposed to have come to his or her death by violence, casualty or undue means, he is required to summon a jury and upon view of the body to inquire into the cause and manner of the death. He has no judicial power, which by the constitution is vested in the courts thereby created. (*Missouri River Telegraph Co.* v. *First Nat. Bank of Sioux City,* 74 Ill. 217; *People* v. *Olson,* 245 id. 288.) The jury are required by their oath to diligently inquire into and true presentment make how and in what manner and by whom or what the body came to its death and to deliver to the coroner a true inquest thereof. The inquiry being analogous to proceedings *in rem* in behalf of the public to ascertain matters of public interest and concern, the verdict is *prima facie* evidence of the facts concerning which the jury are authorized to inquire. *United States Life Ins. Co.* v. *Vocke,* 129 Ill. 557; *Pyle* v. *Pyle,* 158 id. 289; *Armour & Co.* v. *Industrial Board,* 273 id. 590; *Grand Lodge I. O. M. A.* v. *Wieting,* 168 id. 408.

The inquiry which the coroner's jury are authorized by statute to make is how and in what manner and by whom or what the dead body came to its death. It is not within the province of a coroner's jury to fix civil liability upon any person growing out of an accident resulting in death, except in so far as a legitimate finding of physical facts within the power and jurisdiction of the coroner may have that effect. (*Pittsburg, Cincinnati and. St. Louis Railway Co.* v. *McGrath,* 115 Ill. 172; *Albaugh-Dover Co.* v. *Indus-*

o

*trial Board,* 278 id. 179; *Novitsky* v. *Knickerbocker Ice Co.* 276 id. 102.) The jury in this case found from the evidence that Michael Klein died at the Norwegian Deaconess Hospital from the effects of injuries received, which was the only finding of fact contained in the verdict, but the jury added an "opinion" that the injuries resulted from a fall down a flight of stairs at Morris & Co.'s plant at the Union Stock Yards, as he was leaving his work on April 12, 1915, at about 5:30 A. M. There was no finding of the fall as a fact, but if it could be so regarded, the further opinion that the fall occurred as Klein was leaving his work would be a finding fixing a civil liability upon Morris & Co. under the Workmen's Compensation act. That opinion or finding was not admissible in evidence to fix such liability. To hold that the verdict of a coroner's jury is admissible in evidence to fix a civil liability, either at common law or under a statute, upon one who is not a party to the proceeding before the coroner, is not present, has no choice in the selection of the jury, no right to cross-examine witnesses or contradict the evidence tending to prove the liability, is to condemn him unheard and to violate the most elementary rules for the administration of justice between individuals. The Workmen's Compensation act has been sustained on the ground that it is elective, and employer and employee, by electing to come under it, agree that their rights may be settled by arbitration. (*Deibeikis* v. *Link-Belt Co.* 261 Ill. 454.) But the elective feature of the act covers nothing but the provisions of the act itself, and neither employer nor employee, by electing to come under the act, agrees that the rights or liabilities created by it shall be determined or in any manner affected by the finding or opinion of a coroner's jury or any other body having no judicial power to inquire into or decide upon their rights or liabilities and no jurisdiction over the party charged with liability.