CHARLES H. McCOMAS, Administrator c. t. a. of

Mary Edith Wiley, Deceased,

*vs.*

THOMAS H. WILEY et al., Administrators c. t. a. of

Charles L. Wiley, Deceased.

*Legacies saved from lapsing: Section 326, Article 93, Code; not part of assets of deceased legatee. Death in common disaster: no presumption of survivorship. Opinion testimony based on conclusions of others:*
*not admissible.*

When several lives are lost in a common disaster, there is no presumption of survivorship by reason of age or sex; nor is it presumed that all die at the same moment.　　　　　p. 574

In such a situation, it is necessary that a claim which is dependent upon the occurrence of the deaths in a particular order should be supported by satisfactory proof of the sequence of events thus relied upon, and in the absence of such evidence there is no certain basis upon which the asserted right can be sustained.　　　　　　　　　　　p. 574

Opinion testimony which is based upon the conclusions or inferences of other witnesses is not admissible.　　　　p. 580

Where a legatee died before the testator, and the legacy is saved from lapsing by Code, Article 93, Section 326, the legacy is not part of the assets of the deceased legatee, and is not to be distributed to his personal representatives, but passes to the persons then in being who are entitled as next of kin of the legatee under the Statute of Distribution, as in cases of intestacy.
　　　　　　　　　　　　　p. 574

*Decided June 24th, 1919.*

Appeal from the Orphans' Court of Harford County.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*William Pinkney Whyte, Jr.,* for the appellant.

*Stevenson A. Williams* and *Shirley Carter,* for the appellees.

URNER, J., delivered the opinion of the Court.

The petition in this case was filed in the Orphans' Court of Harford County by the appellant, as administrator of the estate of Mary Edith Wiley, who was killed about half-past 8 o'clock on the night of June 22, 1917, together with her husband, Charles L. Wiley, and their only child, an infant daughter, and three other persons, when the automobile in which they were traveling was struck by an express train at a road crossing near Whitehall Station, in Baltimore County. It is alleged in the petition that Mrs. Wiley survived her husband and their child, and that under his will, by which all of his property was devised and bequeathed to her absolutely, her personal representative is entitled to receive from the administrators *cum testamento annexo* of the estate of Mr. Wiley a fund of $1,913.19, which their administration account shows to be the amount of the personal estate for distribution. A previous petition having this object in view was held demurrable because of the insufficiency of its allegations, and an order dismissing it was affirmed by this Court without prejudice to the right of any of the parties to claim the whole or any part of the estate in a suitable proceeding. *McComas* v. *Wiley,* 132 Md. 406.

In the answer filed to the pending petition it is denied that Mrs. Wiley survived her husband and child, and it is averred that they all perished in a common disaster and it is impossible to determine the order of their respective deaths, and the respondents accordingly contend that Mrs. Wiley's personal representative has no interest in the estate. Upon the question of fact raised by the petition and answer, testimony

was adduced in support of the opposing theories, and after final hearing the Orphans' Court reached the conclusion that the petition should be dismissed. An appeal from its order giving effect to that decision has brought the case a second time to this Court.

The issue presented by the record must be decided without the aid of any legal presumptions. This is a settled principle of the common law. "By that law when several lives are lost in the same disaster there is no presumption of survivorship by reason of age or sex; nor is it presumed that all died at the same moment." *Cowman* v. *Rogers,* 73 Md. 405. In such a situation it is necessary that a claim which is dependent upon the occurrence of the deaths in a particular order shall be supported by satisfactory proof of the sequence of events thus relied upon, and in the absence of such evidence there is no certain basis upon which the asserted right can be sustained.

The claim here made by the administrator of the personal estate of Mrs. Wiley depends upon the result of the inquiry as to whether she survived her husband. While her next of kin would be entitled to the estate even if she predeceased her husband, yet in that event the fund would not go to them through the hands of the petitioner as administrator, but immediately, as provided by statute, *Code,* Art. 93, Sec. 326; *Redwood* v. *Howison,* 129 Md. 577; *Vogel* v. *Turnt,* 110 Md. 192; *Wallace* v. *Dubois,* 65 Md. 161.

To meet the burden of proving the allegation that Mr. Wiley's death occurred before that of his wife, the petitioner offered first the testimony of Hugh L. Morrison, the engineer in charge of one of the two locomotives attached to the train which was involved in the accident. This witness testified that when the train was brought to a stop after the collision, with the engines about three hundred yards beyond the crossing, he lighted a torch and went to the front of the first engine, upon which he found three women and a man under the top of the automobile. One of these persons was Mrs. Wiley and the others were Mr. and Mrs. Kirkwood and Mrs.

Anderson. They were all alive, Mr. Morrison testified, when they were removed from the engine. Mrs. Wiley was the first one removed and placed on the ground beside the track. She lived twelve or fifteen minutes, the witness stated, giving evidence of life during that time by moaning and moving her lower limbs. Mr. Morrison said he was assisted in removing the injured persons from the engine by Mr. Joyce, a fireman, and by some other men who were strangers.

John W. Akehurst, the engineer on the first of the two locomotives, was next produced as a witness. He testified that after the train stopped he went to the front of the engine and saw the legs of a man and a woman lying over the bumper, and he then started back along the train to see the conductor and obtain assistance. On the way back he saw the leg of a little girl, and found a man lying dead in the ditch who was afterwards identified as Mr. Wiley. The lifeless body of the child was found nearby under the motor of the automobile. When Mr. Akehurst returned to the head of the train all of the injured had been removed from the engine, and the youngest of the three women, who was Mrs. Wiley, was then, as the witness said, "laying on the ground there moaning. I asked her if I could do anything. She could not mention anything or say a word, but she was living, working her muscles a little." "I honestly say she lived fifteen minutes, if not longer."

The next witness was Frank E. Joyce, who was the fireman on the leading engine. He lighted a torch and went around in front of the engine just after his engineer, Mr. Akehurst, started to the rear. He found three women and a man on the locomotive. At that time Mr. Morrison, the other engineer, appeared. They first removed Mrs. Wiley. She was then living, the witness said, and continued to live about fifteen minutes. Mr. Kirkwood lived only seven or eight minutes, and Mrs. Kirkwood and Mrs. Anderson died last.

At the time of the accident Emil P. Lippert and George B. Shaffer were a short distance away, and they reached the

forward end of the train in time to assist in removing the four injured persons from the engine to the roadside. All were then living, according to the testimony of Lippert and Shaffer. Each of these witnesses stated that Mrs. Wiley was breathing, and they estimated ten or fifteen minutes to be the length of time that she remained alive.

The respondent called as a witness Dr. Milner Bortner, who just before the accident was waiting in his automobile for the train to pass and saw it collide with Mr. Wiley's car as it was driven on the crossing from the opposite side. Dr. Bortner testified that he immediately went up the track along the side of the train and found Mr. Wiley's dead body about sixty feet from the crossing. Proceeding about an equal distance further on, he saw the severed foot of the baby. A short distance beyond he came to the automobile lying between the train and a high mass of rock, and barring his further advance on that side of the track. The doors of the cars were opened about that time, and the Doctor crossed to the other side and went to the front of the train, arriving there just as the last of the bodies was being laid on the ground. He found that Mrs. Wiley was then dead, Mr. Kirkwood about expiring, Mrs. Kirkwood alive and conscious, and Mrs. Anderson alive but unconscious. Later examination disclosed that Mrs. Wiley had sustained a fracture at the base of the skull and that her neck was broken. The witness stated that these injuries must have caused instantaneous death. When asked whether he could tell the order in which the deaths of Mrs. Wiley and her husband occurred, Dr. Bortner answered: "Yes; for the simple reason that Mrs. Wiley being on the side nearest the engine," (as the Doctor had observed before the collision) "and her death being caused by impact with the engine, and Mr. Wiley's death was not caused by impact with the engine, but was caused by being thrown against the wall of rock sixty feet from where collision occurred. The fracture of the skull in his case was caused by a piece of jutting rock against the side of the wall, which was sixty feet from where the accident occurred, so

that it is just the difference between the immediate impact and the time it took him to travel the sixty feet." Being further questioned as to why he stated that Mr. Wiley's death was caused by his being thrown against the rock, the witness said: "The fact that the next morning I examined the rock and found the hair and the brain tissue dashed against the rock at that point."

In reference to the question whether the fact that Mrs. Wiley's neck was broken would necessarily indicate that she died instantly from such an injury, Dr. Bortner said: "It depends entirely on condition of affairs. If it is what is ordinarily called a broken neck, where there is torn ligaments and pressure, rarely ever do they live; death is usually instantly; if it is a fracture of the bone in the neck, they live a long time." Describing how Mrs. Wiley's neck was broken, the Doctor stated: "Just at the base, the juncture of the spinal cord, right at the axis, injured in such a way as to cut off the cord entirely; that is what occurred. It was not a broken bone. In the case of a broken bone a person will live with a broken neck; in that case it does not sever the cord. In this case the pressure on the spinal cord is such as to cause paralysis immediately to the entire lower part of the body." In answer to the question whether there was any breaking of the spinal cord, he said: "There is bound to be some tearing of the cord, but there was no post mortem in this particular instance." To the inquiry whether a post mortem examination would have determined the extent of the injury to the neck, the witness replied: "It might have, if we had opened the spinal column; if we had cut the bone away we could have probably determined whether the spinal cord was torn; it would simply have made the facts more definite in our minds as to what did occur." He said the opinion he formed from the examination he made was that the pressure on the cord "was such as to have caused immediate death because of the paralysis of her organs which it fed."

The second witness for the respondents was M. Stirling Curry, who saw the collision from the porch of the dwelling

of James I. Miller, about a quarter of a mile distant. In company with Mr. Miller he hurried to the scene of the accident. None of the injured persons on the front of the engine had then been removed. Mr. Curry testified that he held Mr. Kirkwood in his position on the engine after the top of the automobile was taken off, and while the three women were being carried from the locomotive and placed beside the railroad. The witness said that Mrs. Wiley was the first to be thus removed, and he concluded she was dead at that time from the fact that so far as he could see she was not breathing and was motionless. Dr. Bortner reached the front of the train about ten minutes after the arrival of Mr. Curry, according to the testimony of the latter witness. Mr. Miller, who accompanied Mr. Curry to the place of the accident and helped to remove the injured from the engine, did not testify in the case, having died some time before the hearing.

The respondents also produced as a witness Harry M. Foster, who was only about a hundred and fifty feet distant from the crossing at the time of the accident, but who went first to the side of the train on which the dead bodies of Mr. Wiley and the child were lying, and did not come to the front of the train until the removal of the four persons from the engine had been completed. He was asked what he noticed in reference to Mrs. Wiley's condition, and said: "Nothing more than I looked at her. She was perfectly quiet; I could not see her move; I could not see her breathe; I considered her dead." He estimated that he reached the front of the train about ten minutes after the collision.

W. Evans Anderson, a justice of the peace and the acting coroner, who arrived at the scene of the accident about fifteen minutes after it occurred, testified that Mrs. Wiley was then dead.

The only other witness who testified to being at the front of the train soon after the collision was Walter S. Ford. He arrived there five minutes after the accident, he said, and found Mrs. Wiley dead at that time. She had then been taken from the engine.

Dr. A. F. Van Bibber was asked and allowed, over objection, to express his opinion upon a hypothetical question, that from the injuries to Mrs. Wiley described' in Dr. Bortner's testimony death was instantaneous.

Testimony was offered by the respondents tending to prove that the engineer Morrison, who testified in the case that Mrs. Wiley lived twelve or fifteen minutes after the accident, had deposed at the coroner's inquest that to the best of his knowledge all of the injured persons found on the engine were living when they were removed, but Mrs. Wiley may possibly not have been then alive; and that the witness Shaffer, who testified at the hearing in this case that Mrs. Wiley survived for ten or fifteen minutes, had previously signed a written statement that she died just as she was being placed on the ground. Both of these witnesses denied that the earlier statements attributed to them had been correctly reported.

Reference has now been made to all of the testimony which we consider most material to the present inquiry. It appears that there were five witnesses who saw Mrs. Wiley before she was taken from the locomotive. Four of these testified positively that she was then living, and one stated that he regarded her as dead because he did not notice that she gave any signs of life. Of the witnesses who saw her for the first time after she had been moved to the ground, the engineer Akehurst, who reached that point five minutes after the collision, testified that she was then alive, while the witness Ford, who arrived there about the same time, states that she was then dead. The other witnesses appear to have been still later in making their observations of Mrs. Wiley's condition. But if she was alive when she was removed from the engine, she undoubtedly survived her husband and child, as their immediate death from the injuries they received is clearly proven. In view of the preponderance of the testimony of those who saw Mrs. Wiley on the front of the locomotive, we can have no hesitation in holding that she was alive at that point of time, unless our decision should be governed by the opinion of Dr. Bortner, supplemented by that of Dr. Van

Bibber, that her injuries must have resulted in death instantly. The expression of opinion obtained from Dr. Van Bibber is open to the objection that it is based in part, as the hypothetical question required, upon Dr. Bortner's opinion as to the effect upon the spinal cord of the injury to Mrs. Wiley's neck and of the fracture of her skull at the base of the brain. Opinion testimony which is based upon the conclusions or inferences of other witnesses is not admissible. *Coughlin* v. *Cuddy,* 128 Md. 83; *Harris* v. *Hipsley,* 122 Md. 433. The testimony of Dr. Bortner that Mrs. Wiley must have died at the instant she was injured is not so convincing and conclusive as to induce us to adopt his opinion in preference to the direct observation of witnesses who testify that she was in fact alive some time after her injuries were received. If, however, his opinion were to be accepted as decisive upon the question as to the sequence of the deaths with which we are concerned, the result would nevertheless be adverse to the ultimate interests of the respondents. As already noted, Dr. Bortner testified that Mr. Wiley survived his wife for the brief interval of time between the colliding of the engine with the automobile and the striking of his head against the rocks sixty feet distant. If this theory that Mrs. Wiley predeceased her husband were to be adopted, the estate in litigation bequeathed to her by his will, would belong to her next of kin by force of the statute to which we have referred. But our conclusion from the evidence is that Mrs. Wiley survived her husband, and that by virtue of the provisions of his will in her favor the administrator of her estate is entitled to the fund in controversy.

The jurisdiction of the Orphans' Court to decide a case of this nature, which was questioned in the argument, was definitely sustained on the former appeal; 132 Md. 410.

*Order reversed and cause remanded, to the end that an order may be passed in accordance with the opinion of this Court, the costs to be paid out of the estate.*