Argued June 28; affirmed July 31; mandate issued
November 8, 1934

# WISE *v.* STATE INDUSTRIAL ACCIDENT
# COMMISSION

(35 P. (2d) 242)

*Walter T. McGuirk*, of Portland (McGuirk & Schneider, of Portland, on the brief), for appellant.

*Miles H. McKey*, Assistant Attorney General (I. H. Van Winkle, Attorney General, and Victor R. Griggs, Assistant Attorney General, on the brief), for respondent.

KELLY, J. One of the questions in this case is whether the report made to the State Industrial Accident Commission by an employer, that claimant's decedent met with an accident arising out of and in the course of his employment, constitutes prima facie evidence of such fact upon issue joined in the circuit court upon claimant's appeal from an order denying claimant's motion for rehearing by the commission.

Claimant's decedent died on March 3, 1932.

The report under consideration was made by Mr. William B. Wright. It bears date, March 4, 1932.

We quote from part I of the report:

"Describe in full how accident happened. Was handling peanuts and wrenched his side. He did not report it at the time. In fact, Mr. Wise would not report any accident at any time, believing that he would be all right in the end."

We also quote from part II of said report:

"Is the information furnished by the workman on part I of this form correct? As far as I know.

"State any reason you may have why the validity of this claim should be questioned. None. Mr. Wise was always very conscientious and he gave me this information February 27, 1932."

Mr. Wright was called as a witness in behalf of claimant. We quote from his testimony.

"Q. You were working, you say, in the evening there with him (Mr. Wise) on November 12th. A. I was.

"Q. And at that time was he handling sacks of peanuts there?

"A. We were.

"Q. You were handling sacks of peanuts. Were those sacks of peanuts heavy or not?

"A. They were stacked in piles of six.

"Q. Stacked in piles of six.

"A. We run a truck under them and broke them and pulled them over. We didn't handle the sack at all.

"Q. Don't answer this question; I suppose it may be objected to. As you have read this over here, did he complain of having received a strain or any injury at that time or any time after ———. A. He did not.

"Q. He did not? A. He did not.

"Q. Have you refreshed your memory? Do you remember what was said in here?

"Mr. Griggs: Now I understand the question was directed to this particular time, Mr. McGuirk.

"The witness: You mean the question here that the information furnished by the workman.

"Mr. McGuirk: Wait a minute. Don't read it. You are not supposed to read it.

"The witness: The first I knew of it was February 27th.

"Q. I refer you again, to refresh your mind, to this part there, Mr. Wright.

"A. That was told to me by another party."

We also quote the cross-examination of this witness:

"Q. I understand you were working with him on November 12th?

"A. Yes sir.

"Q. And you didn't hear about any accident at that time?

"A. I did not."

This testimony of claimant's witness impeaches the report in that the report contains the statement that Mr. Wise gave witness the information of February 27, while the testimony above quoted discloses that the information was given to witness by another party.

The testimony is also at variance with that part of the report which states that witness should have no reason for questioning the validity of this claim,

because the testimony shows that on November 12, 1931, witness was present assisting Mr. Wise; that Mr. Wise made no complaint about having received a strain or injury, and witness did not hear about any accident at that time.

The only ground upon which the report in question could be deemed to be admissible is that it is a self-disserving statement of a party. That brings us to a consideration of the question whether an employer is a party to a proceeding such as the one at bar.

■ Section 49-1825, Oregon Code 1930 (present effective amendment 1933, Second Special Session, chapter 12), among other things, provides that

"When, during the first fiscal year, any employer is a contributor to the industrial accident fund and the total amount paid out of the industrial accident fund or set apart therefrom as hereinafter provided on account of injuries sustained by his workmen shall be less than 50 per cent of the amount contributed to said fund by such employer during such period, not including, however, moneys retained from the workmen's wages, the rate of contribution of such employer during the following year shall be reduced by 20 per cent of the amount hereinbefore prescribed; where the total amount paid out or set aside is more than 50 per cent and not more than 60 per cent of the amount contributed, the rate shall be reduced by 15 per cent; where the total amount paid out or set aside is more than 60 per cent and not more than 70 per cent of the amount contributed, the rate shall be reduced by 10 per cent. Where an employer continues as a contributor to the industrial accident fund, the rate of contribution for each succeeding fiscal year shall be determined in like manner by combining the amounts paid out and set aside on account of injuries sustained by the workmen of such employer during the entire period such employer has been subject to the act, but

not more than the preceding five years, and combining, also, the amounts contributed by such employer to the accident fund during each period; and provided further, that no employer shall be entitled to any such reduction if the commission shall find that during the preceding fiscal year he has wilfully failed to install or maintain any safety appliance, device or safeguard required by statute. If, during any fiscal year, the contribution of any employer is less than $20, the provisions of this paragraph shall not apply and rate of contribution for the ensuing year for such employer shall be base rate. For the purpose of determining the rate, as in this section provided, the amount paid out or set aside on account of an accident resulting in the fatal injury or permanent total disability of a workman shall be deemed to be the average amount paid out and set aside on account of all such injuries during the preceding fiscal year.''

It is urged that, because of the provision of the statute just quoted, the employer has such financial interest in this proceeding that his admissions against interest are admissible in evidence.

We think that a contingent financial interest in the result of a given suit does not in itself alone constitute the one having it a party to the suit, nor render his admissions competent on the ground that they are against his interest. It may affect the credibility of his testimony, but it does not render his declarations binding upon either of the parties in interest: 2 Jones Commentaries on Evidence (2d Ed.) 1663, § 906.

The recovery of a judgment against a city or county might have the effect of materially increasing a large property owner's taxes in that city or county; but that fact would not render the taxpayer a party to the case wherein such judgment was being sought, and certainly an admission, whether written or oral, or by conduct

of such taxpayer, would not be binding upon the city or county as evidence in support of plaintiff's claim therein.

It is also urged that the employer sustains a contractual relationship by virtue of the Workmen's Compensation Law which renders him a party giving to his declarations the effect of prima facie evidence against the commission.

It is stated in *West et al. v. Kozer,* 104 Or. 94 (206 P. 542), that in cases of this kind there is no doubt of the existence of a contract between the employer, the employee and the state, that in case of an injury to the employee sustained while in the course of his employment, the compensation of such employee should be adjusted and paid from the fund provided in the Workmen's Compensation Law.

The contractual relationship existing in such a case as this is clearly stated. It does not render the contract of employment available as the basis of claimant's demand. The statute defines the relationship and substitutes a statutory proceeding for an action based upon negligence. The parties to this statutory proceeding are the commission and the employee. We think that the relationship between the employer, the employee, and the commission under the Workmen's Compensation Act of Oregon does not render admissible the declarations of the employer as self-disserving admissions in such a proceeding as this.

In the case at bar, the employer is not a party to the record, nor a party in interest, nor yet the agent of the commission.

It is true that the statute requires employers to make reports of injuries sustained by their employees;

but it nowhere declares that such reports shall constitute evidence of any character.

We think that no error was committed by the trial court in rejecting said report.

This holding is made after a consideration of cases based upon workmen's compensation statutes of other jurisdictions wherein reports of employers have been considered as evidence, even, in a few instances, when not formally offered.

The sister jurisdictions, to which we allude, are Michigan, Maine, Indiana, Massachusetts, Wisconsin, Wyoming, Oklahoma and Ireland. (With one accord the writer's colleagues insist that Ireland is a foreign jurisdiction.)

Among others, we have considered the following cases on this point: *Reck v. Whittlesberger,* 181 Mich. 463 (148 N. W. 247 Ann. Cas. 1916C, 771) ; *McCartney v. Wood-Temple Co.,* 217 Mich. 505 (187 N. W. 251) ; *Dominic v. Faucett,* 245 Mich. 337 (222 N. W. 758) ; *Jacque's Case,* 121 Me. 353 (117 Atl. 306) ; *Ross' Case,* 124 Me. 107 (126 Atl. 484, 485) ; *Hege v. Tompkins,* 69 Ind. App. 273 (121 N. E. 677) ; *Carroll's Case,* 225 Mass. 203 (114 N. E. 285) ; *F. Eggers Veneer Seating Co. v. Ind. Com. of Wis.,* 168 Wis. 377 (170 N. W. 280) ; *First Nat. Bank v. Ind. Com.,* 161 Wis. 526 (154 N. W. 847) ; *Ideal Bakery v. Schryver,* 43 Wyo. 108 (299 P. 284) ; *Little Fay Oil Co. v. Stanley,* 90 Okla. 265 (217 P. 377 ; *Wright v. Kerrigan,* (1911) 2 Irish Rep. 301.

In Michigan, Maine, Indiana, Wisconsin and Oklahoma, the employer must furnish proof of his financial ability or secure insurance and the award in favor of the employee must be paid directly by the employer or his insurer to the employee: Compiled Laws of Michigan, 1929, §§ 8421, 8426, 8460; Revised Statutes of

Maine, 1930, Chap. 55, parts I and III, §§ 6, 8, 9, 11, 12; § 14, as amended by section 2, chap. 160, Session Laws, 1931, p. 129; and § 15, Acts, 1929, Indiana (76th Sess.) Chap. 172, p. 538, § 5; Wisconsin Statutes, 1931, §§ 102.03 and sub-division 2 of section 102.28; Vol. II, Oklahoma Statutes, 1931, §§ 13351 and 13374.

In Ireland, the award is made against the employer and paid by him: Workmen's Compensation Act, 1906, VI Edw. 7 L R (1906) p. 325, 326, chap. 58, section 1 (1). In the five states above named, and in Ireland, therefore, it is obvious that the employer is the real party defendant and any admission of the employer pertinent to the issues and against the employer's interest would be admissible. It is of interest that in Michigan hearsay statements in a report of a deputy commissioner appointed by the industrial accident board were held inadmissible: *Blozina v. Castile Mining Co.*, 210 Mich. 349 (178 N. W. 57).

The Massachusetts case, above cited, sustained the industrial accident board in its findings that the employer had knowledge of the injury and that the employee's average weekly earnings were $9.50. These findings were based on a report made to the board by the employer. (*Carroll's Case,* supra.)

In Massachusetts the Workmen's Compensation Act requires the employer either to become a member of the Massachusetts Employer's Insurance Association or to become a policy-holder of some liability insurance company authorized to do business in that commonwealth: Acts and Resolves of Massachusetts, 1911, chapter 751, section 22, part IV, and section 3, part V. In that commonwealth, it is expressly provided by statute that the process and procedure shall be as summary as reasonably may be: Ibid. section 3, part

III. A right of appeal to the supreme judicial court is given on questions of law: Section 11, part III, Ibid. There is no provision for the trial of contested questions of fact in any court. Such questions are determined by a committee of arbitration. The hearings of this committee must be held at the place where the injury occurred: Sections 4, 5, 6 and 7, part III, Ibid.

When the case mentioned was under consideration the statute of Massachusetts provided that, if the employee were injured by reason of the serious and wilful misconduct of an employer, or of any person regularly entrusted with and exercising the power of superintendence, the amounts of compensation provided by statute should be doubled; and in such case the employer should repay to the insurer the extra compensation paid to the employer.

The Massachusetts Employer's Insurance Association is in reality a mutual casualty insurance organization comprised of employers who meet the awards by assessments: Part IV, sections 13 and 14, Ibid.

Pennsylvania has a statutory provision similar to that of Massachusetts limiting the purpose of appeal to a review of matters of law. The Pennsylvania court, construing this provision, say:

"The revisory powers of the appellate courts are limited to such consideration of the testimony as will enable the reviewing tribunal to ascertain whether the record contains competent evidence to support the findings of the compensation authorities, and whether, on such findings, the law has been properly applied." *Johnston v. Payne-Yost Const. Co. et al.,* 292 Pa. 509, (141 Atl. 481).

The Oregon statute provides for an appeal to the circuit court from the commissioner's award, after denial of motion for rehearing, and when the commis-

sion shall have appeared, the case shall proceed as other civil cases in said court and upon demand of either party a trial by jury may be had upon any question of fact: Section 49-1843, Oregon Code 1930. The distinction between the Massachusetts procedure and that of Oregon is obvious.

In Wyoming, whenever an accident occurs, causing injury to any workman engaged in any of the extra hazardous employments embraced within the purview of the Workmen's Compensation Act, it becomes the duty of the employer and the injured employee, or some one on his behalf, or in behalf of the injured employee's dependents, if he be killed or die from the injury, to make a report of such accident and the apparent injury resulting therefrom and file the same in the office of the clerk of the district court of the county wherein such accident occurred. The clerk of that court then notifies the judge thereof. It thereupon becomes the duty of the judge to investigate the nature of said injury and claim for compensation in such a manner as he may deem necessary to ascertain whether the claim for compensation or the amount thereof is disputed by the employer; and if there be no dispute as to the right of the injured workman to receive compensation, or as to the amount thereof, and the claim appear to be free from collusion, said judge shall thereupon make an order directing payment for such compensation from the state industrial accident fund. If there be a dispute as to the right to compensation, or as to the amount thereof, a hearing is had. The county and prosecuting attorney, or some other attorney appointed by the court, represents the injured workman. The employer may appear in person or by counsel.

"No costs shall be taxed by the clerk except fees for witnesses, who may be subpoenaed and who shall be

allowed the same fees, for attendance and mileage, as is fixed by law in civil actions, and jury costs shall also be taxed to and paid from the accident fund, if the verdict and judgment be in favor of the employer; but if against the employer then he shall pay the costs." Section 124-113, Wyoming Rev. Sts. Ann. 1931, pp. 2002-3.

There, an appeal to the supreme court may be prosecuted by the employer as well as by the employee or his dependents. Section 112-114, ibid. In that jurisdiction there can be no doubt that the employer is an adverse party in a contested proceeding of this character.

In Oregon, it is conceivable that a report by an employer to the commission stating facts, which would warrant payment to the injured workman from the funds of the commission, might be a self-serving declaration instead of a self-disserving admission. It might be collusively made or it might be falsely made to avoid the prosecution of a claim against the employer. In the case at bar, we impute nothing of that kind.

■■ Dr. V. E. Ruedy, a physician and surgeon of Portland, testified that on December 9, 1931, claimant's decedent consulted him at which time the doctor made a diagnosis of diabetes mellitus. On December 18, 1931, decedent again called upon Dr. Ruedy. The doctor further testified that in determining what decedent's condition was, he took into consideration the various tests that would suggest sacro-iliac strain, and then the history that while lifting a heavy load on November 12, decedent first noticed the pain in his back.

Objection was seasonably urged to any statement of decedent as to the happening of an accident by which decedent was injured.

It is urged that the trial court erred in limiting the effect of the statement made by decedent to Dr. Ruedy with reference to the alleged origin and cause of his pain only to the purpose of fully disclosing the basis of Dr. Ruedy's diagnosis. It is urged by claimant that such statement was and is admissible to show how claimant's decedent was injured.

"The authorities are nearly uniform in holding that statements made to a physician by a patient as to the cause and manner of the happening of an injury, which statements are not made so near in point of time to the fact as to constitute a part of the res gestae, are not admissible in evidence." 14 Ann. Cas. 451, citing authorities. 67 A. L. R. 22, pars. VII and VIII, citing authorities.

*Ross' Case,* 124 Me. 107 (126 Atl. 484); *Eagle-Picher Lead Co. v. Black,* 164 Okla. 67 (22 P. (2d) 907); *Bunker v. Motor Wheel Corp.,* 231 Mich. 334 (204 N. W. 110); *Morris & Co. v. Industrial Board,* 284 Ill. 67 (119 N. E. 944, L. R. A. 1918E, 919).

In an exhaustive specially concurring opinion in the case of *Reid v. Yellow Cab Co.,* 131 Or. 27 (279 P. 635, 67 A. L. R. 1), Mr. Justice ROSSMAN, in discussing statements of plaintiff to a physician not for the purpose of treatment, but to enable the physician to testify, uses this significant language:

"The plaintiff does not contend that any communication made by the plaintiff to Dr. Smith was admissible to establish any fact thus mentioned. Indeed the only purpose the narrative, as repeated by the physician, serves is to outline in part the foundation for his opinion; if the communication was false, the opinion to that extent fails, and should be disregarded.

\* \* \* \* \*

"To me it seems that the authorities, which exclude the medical expert's opinion, lay undue emphasis upon

the communications of the declarant; it is not the latter, but the physician's opinion, which becomes the evidence.''

In *Patterson et ux. v. Howe,* 102 Or. 275 (202 P. 225); *Yarbrough v. Carlson,* 102 Or. 422 (202 P. 739), and *Weygandt v. Bartle,* 88 Or. 310 (171 P. 587), this court, speaking through Mr. Justice BEAN, have announced the rule that a physician may testify to the injured party's statement as to his symptoms, ills and the locality and character of his pain when made for the purpose of medical advice and treatment, as such statements are made with a view to being acted upon in a matter of grave personal concern, in relation to which the injured party has a strong and direct interest to adhere to the truth.

It will be noted that this rule restricts the nature of the statements so received to those symptoms, ills and the locality and character of the pain. It does not include statements as to the cause of the injury or the circumstances attending the accident.

We hold that no error was committed by the trial court in limiting the effect of decedent's statements to Dr. Ruedy as above stated: 67 A. L. R. 18, par. IV.

█ A hypothetical question was asked Dr. Irvine as follows:

"Doctor Irvine: I will repeat this question as I have redrafted it here to you, and you answer it: Assuming that a man approximately 61 years of age, who had been employed continuously for 14 years, or thereabouts, for a firm and doing hard, heavy work for this firm, found it necessary to consult a physician and surgeon on December the 9th, 1931, and following that date the physician diagnosed the man's condition as sacro-iliac injury, following tests made for that

purpose, and after a history of pain in the back from the claimant and a statement from the patient that he had strained himself on November the 12th, 1931, while lifting a heavy sack of peanuts, that the wife of the patient had administered heat and massage treatments previous to December the 9th, 1931, when he went to the doctor, and the doctor prescribed strapping and later a sacro-iliac belt and light treatment,—infra-red is the testimony,—and advised lighter work, and the employee continues in the work until February 22, 1932, during that time complaining of pain and suffering, and being under the care of a doctor who saw him periodically, and that on February 22d, at about 8:30 in the morning, he collapsed on the work and was brought home, and that he died on March the 3rd, 1932, of heart failure or decompensation of the heart, with contributing causes of diabetes mellitus and cardiorenal disease, assuming the foregoing facts to be true, Doctor, I will ask you to state whether or not in your opinion the sacro-iliac strain diagnosed by the attending physician and the history of the strain and injury on November 12, 1931, while lifting a sack of peanuts, given to the attending physician was the cause of the heart failure or heart decompensation that caused the death of the employee?''

To this question objection was interposed. The ruling of the court in sustaining the objection is assigned as error.

It will be noted that in part the question is based upon the diagnosis of Dr. Ruedy and the assumption that on November 12, 1931, deceased had strained himself while lifting a heavy sack of peanuts. There being no competent evidence of the latter fact and the mere opinion of one physician not being a proper basis for a hypothetical question addressed to another physician, no error was committed in sustaining the objection: *Louisville N. A. & C. R. Co. v. Falvey,* 104 Ind. 409 (3 N. E. 389, 4 N. E. 908) ; *Ward v. Aetna Life Ins. Co.,*

82 Neb. 499 (118 N. W. 70); *Crozier v. Minneapolis St. R. Co.,* 106 Minn. 77 (118 N. W. 256); *People v. Bowen,* 165 Mich. 231 (130 N. W. 706); *McComas v. Wiley,* 134 Md. 572 (108 Atl. 196); *Pecos & N. T. Ry. Co. v. Coffman,* 160 S. W. 145; *Hutchinson v. Missouri Pac. Ry. Co.,* 288 S. W. 91, and cases there cited.

In holding that the diagnosis in this case by Dr. Ruedy was an expression of his opinion, we are actuated in so doing because the statement made by decedent, as to the cause of the injury, was one of the grounds upon which that diagnosis was based. A different phase would be presented if, based wholly upon his own knowledge, Dr. Ruedy had merely described decedent's symptoms, malady, or other physical condition, no matter whether that description was couched in technical terms or merely in language any one could understand. The fact that the writer resorted to a dictionary to ascertain that cardio-renal means pertaining to the heart and kidney; that mellitus is derived from the Greek word meaning honey, and that the derivation of diabetes indicates a flowing, creates no inclination on his part to believe that those terms could not be used as merely descriptive of a physiological condition. When so used, whether by an expert or a non-expert, the condition so described could be incorporated in a hypothetical question to be propounded to an expert.

The case of *Standard Oil Co. v. Mealey,* 147 Md. 249 (127 Atl. 850), holds that the statements of a deceased workman made to his wife and to his physicians as to the happening of the accident, and the manner thereof, when that is all the evidence there is of such occurrence, justify the submission of the case to the jury. In view of the provision of the Oregon statute, however,

to the effect that a case of this character shall be tried as other civil cases, we do not consider the Maryland case just cited as controlling.

There being no competent evidence that claimant's decedent was injured by an accident arising out and in the course of his employment, the motion for involuntary nonsuit was properly sustained.

The judgment of the circuit court is affirmed.

RAND, C. J., and ROSSMAN and BELT, JJ., concur.