Argued September 5; reversed September 24, 1935

# WATROUS *v.* SALEM BREWERY ASSOCIATION

(49 P. (2d) 375)

*James Arthur Powers* and *Frank Senn*, both of Portland (Senn & Recken, of Portland, Carson & Carson, of Salem, and Phillip A. Joss, on the brief), for appellant.

*Victor R. Griggs* and *Emmons & Emmons*, all of Salem, for respondent.

CAMPBELL, C. J. This is an action based on personal injuries.

Plaintiff entered the employ of defendant in the fall of 1933 as a general mechanic. He was engaged in pipe fitting and hanging pipe in a brewery building that was being remodeled. While so employed, he fell to the cement floor by reason of what he claims was a defective ladder on which he was standing while attaching some pipehangers to the ceiling. The fall, he claims, ruptured a blood vessel in his right leg, injured his ankle, so that there was a loss in the functions of his leg, suffered much pain, and had been permanently injured and incapacitated from following his usual employment. He was compelled to employ physicians. He alleges that his injuries were caused by defendant's negligence in failing to provide him with a safe platform on which to work and in furnishing him with a defective ladder.

Defendant denied the material allegations of the complaint and by way of an affirmative answer and defense alleged that whatever injury plaintiff may have received he was fully compensated for; that plaintiff executed releases and settled and compromised his claim arising out of the alleged injuries and exonerated the defendant from liability thereon.

For a second affirmative answer and defense, it alleged facts showing that plaintiff assumed the risk attendant on the work he was performing. Also contributory negligence on the part of the plaintiff.

The new matter in the answer was denied in the reply, which further alleged that the releases were obtained by fraud.

The case was tried to a jury who returned a verdict for plaintiff on which judgment was entered.

Thereafter, and in due time, defendant moved for a new trial on the ground of newly-discovered evidence. This motion was supported by an affidavit showing what the newly-discovered evidence was. The court overruled the motion. Defendant appeals, assigning as the principal error the refusal of the court to set the judgment aside on the ground of newly-discovered evidence.

The testimony for respondent tends to show that at the time of the injury he was 47 years of age; that he had worked as an engineer in the United States navy yard at Bremerton, Washington, for about 12 years prior to his coming to Oregon; that, during the latter part of the year 1931, he left that employ and came to Oregon where for some time he worked as a farmhand in eastern Oregon; that, in the fall of 1932, he began to work on a farm near Salem where he, and a woman, purported to be his wife, received as compensation $20 per month and their board and room.

On October 9, 1933, he entered the employ of appellant where he worked as a general mechanic doing some blacksmith work, pipe fitting and fastening pipe to hangers which he placed on the ceilings and walls inside the building. On December 1, 1933, respondent had been at work for appellant for about six weeks. On that day he was using a ladder selected by himself from a pile of ladders from which he had previously used ladders. The ladder selected on this day was one that he possibly had used before and was long enough to reach a beam 10 feet above the floor against which he placed the upper end. He then got his tools and equipment, and as he was about to climb up to fasten the hangers to the beam he put his right foot on the bottom rung and raised himself up. The rung gave way at the right end, causing his foot to slip over against the right standard, dropping him to the floor. He injured his ankle and the lower part of his right leg. He repaired the ladder and went on using it in his work. He made no report of his injury until the next morning. The injury occurred on Friday. Saturday morning he told the man in charge of the work that his left leg hurt and he wished to lay off which he was allowed to do. On Monday morning he reported the accident to the office and went to the doctor recommended by appellant. He was under the care of this doctor, Doctor Garnjobst, for about 15 days having his leg treated. On January 4, 1934, he returned to work for appellant doing the same work as he had been doing before the accident. He continued his work without interruption until January 18 when he complained of pain which had developed in his right leg while standing on a ladder. He called upon Doctor Garnjobst but kept on with his work until January 27, 1934, when his leg began to swell causing him so

much pain that he had to quit. Shortly thereafter his condition was diagnosed as phlebitis.

On the trial respondent testified that his name was Charles Watrous; and that he had been employed under that name for about 12 years in the United States navy yard at Bremerton, Washington. Respondent also testified that prior to the accident on December 1, 1933, he had enjoyed good health; that he had not been injured, and "I never suffered no pain in my leg until this".

He further testified that he had been examined many times by the navy medical men for physical defects, and at the time of his discharge from the navy yard he was in good physical condition.

Respondent introduced in evidence the discharge slip that he received from the navy yard at Bremerton. This was done for the purpose of showing that he had no disabilities at that time. The name of Charles Watrous was written in ink and had the appearance of having been changed.

Appellant called as a witness a Mr. Babcock who testified that he had been employed at the Bremerton navy yard for 26 years. He stated that the name of an employee was always typed on a discharge slip and not written by the worker himself. Respondent denied that there had ever been any erasures made on the slip.

Appellant questioned the validity of the discharge slip and called W. I. Staley and qualified him as a handwriting and document expert. The witness was asked: "Whether or not there appears on the paper at that point and across that line of signature any appearance of an erasure? A. Yes, sir." This line of testimony was objected to and the objection sustained by the court. Counsel offered to prove by the expert that the appearance of the paper showed that there had

been an erasure; that, by holding the paper up a certain way and looking along it, it appeared flat and if it were held to the light and looked through, it could be ascertained that the paper under the name was much thinner than the rest of the paper and that the name, Charles Watrous, was written after the erasure had been made. The court refused to permit this testimony to go to the jury.

Respondent called as a witness a woman whom he asserted to be Mrs. Charles Watrous, his wife, who testified that she married respondent in the year 1931, and that at the time she married him and at no time thereafter, until the accident, did he have any trouble with his leg. She also testified that she and respondent intermarried at Tacoma, Pierce county, Washington, about four years ago, and she has lived with him ever since.

Respondent also called Mr. and Mrs. Gloyd Chapman, for whom he had worked for some time before the accident, who testified that respondent appeared to have no physical ailments during that time.

The main question presented is whether a new trial should be granted.

Appellant's motion for a new trial is supported by an affidavit of one Sadie Gossett to the effect that she has lived in Bremerton for the past 22 years; that she is the lawful wife of Charles Gossett and that she and respondent intermarried at Bates, South Dakota, 23 years ago, and they lived together as husband and wife for 19 years until he deserted her and their three children when he ran away with one Bernice Fox, four years ago; that there has been no divorce between them; that her said husband had the tip of one finger cut off; that a picture which is attached to the affi-

davit, as the picture of Charles Watrous, is the picture of her said husband, Charles Gossett, and that he is traveling under an assumed name. She further deposed that he, her said husband, "at times had trouble with his right ankle which caused him pain and discomfort and some swelling". There is also attached to the motion a statement made by the county clerk of Pierce county, Washington, under seal, to the effect that he had searched the records of said Pierce county and that there was no marriage certificate filed in said county showing the marriage of Charlie or Charles Watrous, or for Bernice Fox, during the five years previous to the date of the certificate, November 14, 1934.

It is true that this statement, although designated as an "affidavit", is not sworn to, nor is it in the usual form of a certificate of a public official, yet the statement was not moved against. Neither the affidavit of Sadie Gossett nor the certificate of the county clerk is denied by respondent.

Appellant could not anticipate any of the matters set up in the motion and affidavit in support thereof. Not until respondent introduced the discharge slip, which had the appearance of being altered, did appellant have any notice that respondent might be living under an assumed name, or using a discharge slip issued to some one else, or that the woman whom he called as a witness might not be his wife.

It is contended by respondent that the newly-discovered evidence is immaterial to the issues involved. Respondent evidently thought it was material when the discharge slip, purporting to be a slip issued to Charles Watrous, was introduced, and when he called his purported wife and had her testify that she was

his wife and that he had no physical ailments nor suffered any injury during the time that she was his wife, thus trying to get the advantage before the court and jury of what should be the sacred relationship of husband and wife.

The testimony of the purported wife was not cumulative to that of Mr. and Mrs. Chapman who only knew the respondent for about one year. Respondent's testimony is to the effect that he was always well and did not suffer any pain, nor did he have any swelling in his leg prior to the accident. The affidavit of Sadie Gossett is, that at times prior to the accident he did have trouble with his ankle and that he sometimes had swelling in his leg.

"A former judgment may be set aside and a new trial granted on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

 .\*   \*   \*   \*   \*

4. Newly discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial;   \*   \*   \*". Oregon Code 1930, § 2-802.

Due diligence does not require a party to anticipate that respondent would have produced a discharge slip to show that he was physically sound at the time he left the employ of the United States navy yard. Appellant had no way of discovering that respondent ever did work at the navy yard prior to his testimony in the case. The testimony of Mr. Babcock is to the effect that no Charles Watrous ever was in said employ of the navy yard.

If the supporting affidavit of Sadie Gossett is true —and it is not denied—it would appear that respondent

wished to and did conceal his true identity from appellant and from the court and jury.

Appellant did not introduce any testimony that the woman, who swore she was the wife of Charles Watrous, was not so in fact, so the testimony disputing that fact would not be cumulative. No one could now say how much discredit such contradictory testimony might throw on respondent's whole story.

■ Respondent contends that the motion for a new trial is insufficient in that it failed to show that appellant could and would produce the newly-discovered evidence at a new trial. However this is not a statutory requirement, but may be taken into consideration in the exercise of sound discretion.

■ Each motion for a new trial on the ground of newly-discovered evidence must rest on its own particular facts and circumstances. And if the affidavit shows a state of undisputed facts that would probably lead the ordinarily reasonable person to a different conclusion than that arrived at by the jury, and, the other necessary elements being present, the court should set the judgment aside and grant a new trial.

■ The affidavit and facts contained therein substantially comply with the requirements set out in *State v. Hill,* 39 Or. 90 (65 P. 518):

"Newly discovered evidence which will justify a court in setting aside a verdict and granting a new trial must fulfill the following requirements: '(1) It must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be merely impeaching or contradicting the evidence' "

This decision was rendered prior to the amendment to the statute of 1907 (Laws of 1907, Chap. 162, § 2), but the same principles apply to the setting aside of the judgment. Judgments are now set aside in the same manner as a verdict was formerly set aside: *Benson v. Birch*, 139 Or. 459 (10 P. (2d) 1050), and the cases cited therein.

As this cause must be reversed and the matter remanded for a new trial, it will be necessary to pass upon the other alleged errors.

■ The second assignment of error is based on the court's ruling in admitting certain evidence given by Dr. Louis K. Poyntz.

In March, 1934, at the suggestion of his counsel, respondent called upon Dr. Poyntz who heard his story and gave him a physical examination. He gave him no treatment nor did the doctor prescribe for him. Dr. Poyntz again saw him two days and again one day before the trial. The doctor was called as an expert medical witness on behalf of respondent for the purpose of showing the present physical condition of respondent and what likely caused it. It would appear that respondent's visits to Dr. Poyntz were for the purpose of qualifying the doctor as an expert medical witness. In such a case the expert medical witness should not be permitted to relate to the jury what the respondent told him regarding how the accident happened: *Reid v. Yellow Cab Co.*, 131 Or. 27 (279 P. 635, 67 A. L. R. 1). Respondent could testify regarding his ailments before the court and jury. His testimony could then be reduced to the form of a hypothetical question and submitted to the medical expert. The rule is sometimes different where a patient consults a physician for and receives medical treatment. This question is fully

discussed and the authorities collated in *Wise v. S. I. A. C.*, 148 Or. 461 (35 P. (2d) 242). The doctor who examined the respondent merely to qualify as a medical expert witness should base his testimony on the facts stated in the hypothetical question and the physical examination, where one is made. Dr. Poyntz's testimony was to the effect that he arrived at his conclusion from what the respondent told him, his examination, and the facts stated in the hypothetical question. The vice of such testimony is that the opposing party can not rebut it because he does not have all the premises.

The doctor further testified that respondent's story to him was substantially the same as that given in the hypothetical question. This made the witness a judge of a question of fact on which he was not called as an expert.

■ The third assignment of error is based on the refusal of the court to permit W. I. Staley, the handwriting and document expert, to testify to what extent the discharge slip had been altered.

In our judgment the evidence offered was admissible. The condition of the slip was such that a layman might not understand it and it required an expert to make it clear to the minds of the jury: Wigmore on Evidence (2d Ed.), § 2027. It was a matter of importance whether the erasure was made before or after the name "Charles Watrous" was written thereon.

■ The fourth assignment is based on the refusal of the court to permit a more complete cross-examination of the witness "Mrs. Charles Watrous". In the light of subsequent events, it would appear that such cross-examination should be allowed. Cross-examination should be liberally permitted but should not be allowed

to bring out any matters not germane to the issues involved.

The judgment will be reversed and a new trial granted and the cause remanded to the circuit court for further proceedings not inconsistent herewith.

It is so ordered.

BELT, KELLY and BEAN, JJ., concur.