Argued March 2, affirmed April 6, 1955

# STATE OF OREGON *v.* IMLAH

281 P. 2d 973

*Floyd D. Hamilton,* Portland, argued the cause for appellant.

*Kenneth M. Abraham,* District Attorney for Hood River County, Hood River, argued the cause for respondent.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN, LUSK, BRAND and LATOURETTE, Justices.

LUSK, J.

In this case the defendant, Donald Dwaine Imlah, was found guilty by a jury of murder in the first degree, without recommendation of life imprisonment, and was sentenced to death. He has appealed on the sole ground that the verdict was not the unanimous verdict of the jury.

There are five assignments of error, but they all raise the single question in different ways. There is no claim that the defendant was not fairly tried, or that any error of law in the admission or rejection of evidence, or in the instructions, was committed by the trial judge. Indeed, there is no claim here that the defendant was not guilty as charged. The defendant took the stand and his own testimony would have warranted the verdict. The defense of insanity was interposed, but was not sustained, as the expert witnesses called by the defense would go no farther than to express the opinion that the defendant was a psychopathic personality but that he did know the difference between right and wrong. A psychiatrist called by the state was of a like

opinion. Nevertheless, the question of the defendant's guilt and of the degree of his guilt, and of the penalty if he was found guilty of murder in the first degree, was for the jury. And, if it is established by competent evidence and in a manner sanctioned by the law that the verdict rendered and received by the court was not the verdict of all twelve of the jurors, the conviction cannot stand. In view of the judgment of death which hangs over the prisoner, his plea is entitled to receive from this court, and has been given, the most careful and serious consideration.

The record upon which the question arises is as follows: At 2:20 P.M. on Saturday, December 12, 1953, the judge having completed his charge, the jury retired to deliberate upon their verdict. At 5:10 P.M. the jury returned into court and the foreman announced that they had reached a verdict. The judge thereupon read the verdict which found the defendant guilty as charged. It was signed by the foreman. The judge proceeded to poll the jury, asking each of them whether he or she concurred in the verdict. When he put the question to Juror No. 9, Mr. Allen M. Clark, the following occurred:

"THE COURT: Mr. Clark.
"JUROR NO. 9: Yes; with reluctance.
"THE COURT: What was it? State your answer, please?
"JUROR NO. 9: With reluctance.
"THE COURT: Answer the question?
"JUROR NO. 9: With reluctance.
"THE COURT: Well, do you or do you not concur? I want to know, yes or no?
"JUROR NO. 9: Yes."

All the other jurors having answered the question in the affirmative, the court then asked counsel if they were satisfied with the poll, whereupon one of the

attorneys for defendant stated that he was not. After a brief colloquy between court and counsel the court directed the jury to retire to the jury room. Further discussion ensued in which the district attorney insisted that the verdict be received, and counsel for the defendant objected. The court concluded the discussion by directing the jury to be returned to the court room and again polled the jury. This time all the jurors except Mr. Clark answered "Yes" to the question. He answered "No". Counsel for defendant then moved the court to discharge the jury on the ground that the juror Clark did not concur in the verdict, and that to continue the deliberations "may result in forcing a verdict". The motion was denied. The district attorney moved that the verdict be received. That motion was likewise denied, and the jury retired for further deliberation.

Some two and one-half hours later the jury again returned to the court room with their verdict of "Guilty as charged." The jurors were polled, the court stating that he wanted an "unqualified answer" from them. Each of them answered "Yes" to the question, and the court received the verdict, filed it with the clerk, and discharged the jury. Thereafter in chambers counsel for the defendant stated to the court that in his opinion Mr. Clark "very decidedly hesitated before he answered the question 'yes' ", and moved the court "to interrogate Mr. Clark to determine if he actually and truly agrees with the verdict", and "to instruct Mr. Clark that he is not bound to concur in any verdict that the other jurors feel is proper, and that he is at liberty to arrive at any verdict which he deems to be fit and proper." Counsel for the defendant also renewed his motion to discharge the jury and objected to the court's failure previously to discharge the jury when requested to do so. The court denied the motions.

After sentence had been passed the defendant moved for an order setting aside the verdict and granting a new trial on the grounds of "irregularity in the proceedings of the jury" and the court's denial of defendant's motion to discharge the jury. The motion proceeds:

"Specifically the irregularity in the proceedings of the jury consists of the failure of the jury to render a valid or any verdict and the error of the Court consisted of the failure of the Court to allow the defendant's motion to discharge the jury after the jury failed to arrive at an unanimous verdict and in requiring the jury to further deliberate thereby forcing and coercing a purported verdict."

The motion is supported by the affidavit of Mr. John N. Mohr, one of the attorneys for the defendant, but it is not necessary to set forth its contents because it adds nothing to the showing otherwise made.

Upon the hearing of the motion for a new trial counsel for defendant produced an affidavit of the juror Allen M. Clark, sworn to on January 9, 1954, but the court refused to consider it on the ground that it was an attempt by the juror to impeach his own verdict. The court permitted the affidavit to be received as "an offer of proof." It is not, however, a part of the bill of exceptions. We set forth the affidavit in full, save for the first part of it, which is merely a recital of the record as given above, down to the point where the jury retired after the second poll:

"That the jury was then sent out for further deliberation; that the other jurors sought to have me change my verdict and brought to bear on me such pressure that I finally agreed to concur in the verdict of the other jurors, even though it was not my verdict, and at approximately 8:30 P.M. of said day the jury again returned to the courtroom and returned a verdict finding the defendant guilty

of murder in the first degree without the recommendation for leniency.

"That the Court again polled the jury, and when I was asked whether the verdict returned was my verdict I said 'yes', after hesitation, although it was not my verdict.

"That the verdict returned and filed in said case was not my verdict, is not my verdict, and never has been my verdict.

"That I stated that said verdict was my verdict only because the other jurors brought great pressure to bear upon me and prevailed upon me to agree with their verdict, even though it was not my verdict and even though I did not and do not believe that it was or is a proper verdict in said case.

"That except for the pressure brought to bear upon me by the other jurors, and their insistence that I say that the verdict returned was my verdict, when in fact it was not, I would not have said that the verdict returned was my verdict.

"That I make this affidavit at the request of John N. Mohr and Floyd D. Hamilton, Counsel for defendant.

"That in making this affidavit I have not been threatened or coerced in any manner, and I have not received anything or been promised anything for making this affidavit.

"That I make this affidavit solely because the matters stated herein are true and because I do not think it is right that the defendant should be executed, since the verdict returned in said case, and upon which judgment was rendered, was not and is not my verdict."

■■ Defendant's first assignment of error is based on the court's denial of the motion for a new trial. We are met at once with the question whether the well-established rule that a juror will not be permitted to impeach his own verdict is to be followed in this case. From a strictly procedural standpoint the affidavit is not before the court in any view of the matter, for "this court has uniformly held that affidavits, or other

matters *dehors* the judgment-roll as defined by the statute, are not part of the record, and cannot be considered on appeal from the judgment, unless incorporated into a bill of exceptions". *Shaughnessy v. Kimball,* 106 Or 484, 486-489, 212 P 483. See, also, *Megler v. Tarabochia,* 115 Or 666, 239 P 829. The State, however, has not urged the objection, and, in view of the gravity of the issue, we consider it our duty to examine the affidavit and the contention based upon it.

■ In *Winters v. Bisaillon,* 152 Or 578, 580, 54 P2d 1169, we said:

"* * * Beginning with the case of Cline v. Broy, 1 Or. 89, and proceeding through an unbroken line of decisions to the same effect, this court has held that the affidavits of jurors as to what occurred during their deliberations may not be received to impeach their verdict", citing Oregon cases.

The line is still unbroken, the latest decision apparently being *Parmentier v. Ransom,* 179 Or 17, 25, 169 P2d 883. The rule has been applied equally in criminal as in civil cases. See, e.g., *State v. Wilson,* 177 Or 637, 643-644, 164 P2d 722.

The defendant argues that in view of the record above stated and the fact that Juror Clark swore in his affidavit that he said that the verdict was his verdict only because of the "pressure" from other jurors, he did not concur in the verdict at all, and there was "therefore no verdict to impeach." This is sheer begging of the question, for what we have to determine is whether Juror Clark's affidavit is competent evidence to contradict the verdict in which he joined in the discharge of a solemn oath-bound duty.

It is also contended that the rule which will not permit a juror to impeach his verdict has its exceptions. Among other cases cited by defendant is *Mattox v. United States,* 146 US 140, 36 L ed 917, 13 S Ct 50,

where the defendant was convicted of murder, and the Supreme Court of the United States reversed the lower court for refusing to set aside a verdict upon a showing by jurors' affidavits that a newspaper comment on the trial, prejudicial to the defendant, had been introduced into the jury room and read to the jury during their deliberations. The Mattox case was cited in *State v. Ausplund*, 86 Or 121, 135-138, 167 P 1019, but this court refused to follow it. The defendant Ausplund was convicted of the crime of manslaughter by abortion. On appeal he contended that the Circuit Court erred in refusing to grant him a new trial sought on the basis of three jurors' affidavits that during their deliberations one of the jurors had stated to his fellows "that during a recess of the court while the trial was in progress one of his neighbors had told him that the defendant had been guilty of performing criminal abortions on previous occasions." The court adhered to the settled rule in this state and affirmed the judgment of conviction. The opinion quotes at length from *McDonald v. Pless*, 238 US 264, 267, 59 L ed 1300, 55 S Ct 783, which was decided after the Mattox case and in which the public policy behind the rule is set forth with persuasive force. We think it well to repeat here a portion of what we then quoted from *McDonald v. Pless*:

"* * * But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harrassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was in-

tended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference. * * * And, of course, the argument in favor of receiving such evidence is not only very strong but unanswerable—when looked at solely from the standpoint of the private party who has been wronged by such misconduct. The argument, however, has not been sufficiently convincing to induce legislatures generally to repeal or to modify the rule. For, while it may often exclude the only possible evidence of misconduct, a change in the rule 'would open the door to the most pernicious arts and tampering with jurors.' 'The practice would be replete with dangerous consequences.' 'It would lead to the grossest fraud and abuse' and 'no verdict would be safe': Cluggage v. Swan, 4 Binn. 155 (5 Am. Dec. 400); Straker v. Graham, 4 M. & W. 721.''

See, also, *Northern Pacific Railway Company v. Mely*, 219 F2d 199, 201-202 (CCA 9th), per Fee, Circuit Judge.

Referring to the Mattox case and *United States v. Reid*, 53 US 361, 366, 13 L ed 1023, the Supreme Court of the United States, in concluding its discussion of the subject, said:

''* * * Both of those decisions recognize that it would not be safe to lay down any inflexible rule because there might be instances in which such testimony of the juror could not be excluded without 'violating the plainest principles of justice.' This might occur in the gravest and most important cases; and without attempting to define the exceptions, or to determine how far such evidence might be received by the judge on his own motion, it is safe to say that there is nothing in the nature of the present case warranting a departure from what is unquestionably the general rule, that the losing party cannot, in order to secure a new trial, use the testimony of jurors to impeach their verdict.'' 238 US at 268.

In *Wharton v. People,* 104 Colo 260, 90 P2d 615, a capital case, the court held that the circumstances were such as to justify a departure from the general rule. The jury in that case were out 27 hours before returning with a verdict. In an affidavit of one of the jurors in support of a motion for a new trial it was averred that he repeatedly refused to joint in a verdict carrying with it the death penalty; that after the deliberations had gone on for some time some of the jurors accused him of having been "fixed" or "bought off"; that they accused him of having perjured himself in stating on the voir dire examination that he was not opposed to the death penalty; that they cursed and swore and used vile language against him and the defendant, and brow-beat him and persistently followed him around the jury room and would not permit him to escape from them or get any rest; that after hours of this behavior on the part of the other 11 jurors he became so physically weak and exhausted that he was unable to speak or argue without breaking down physically; that he acquiesced in the verdict to escape the continued pressure; that it was not his verdict; and that he was in such a weakened physical condition and was so dominated by the other jurors that he was unable to exercise a free and independent judgment. The court thought that if these were the facts the fundamental right of the defendant to a trial by "due process of law" had been violated, and remanded the case for a determination by the trial court of the truth of the charges in the affidavit and a new trial should the charges be sustained.

Other cases on which the defendant relies are *Clark v. United States,* 289 US 1, 77 L ed 993, 53 S Ct 465, which merely reiterates arguendo that there may be exceptions to the general rule, and *Southern Pacific Co. v. Klinge,* 65 F2d 85; *Prince v. State,* 158 Tex Cr

R 320, 254 SW2d 1006; and *Casstevens v. Texas & P. R. Co.*, 119 Tex 456, 32 SW2d 637, all of which are in conflict with the settled law of this state. The Texas decisions moreover were controlled by a statute. See 119 Tex at 460.

On the other hand, the Supreme Court of California in *People v. Sutic*, 41 Cal2d 483, 261 P2d 241 (1953), applied the rule in a murder case where the jury returned a verdict of guilty without recommendation, and the death penalty was imposed. The evidence was entirely circumstantial. In more than one particular the case presents a striking parallel to the case at bar. The record showed that after some two and one-half hours of deliberation the jury returned and the foreman announced their verdict. "The jury was then polled and one juror expressed doubt as to the full understanding of the meaning of the verdict. The court thereupon ordered the jury to deliberate further. About an hour later the jury returned with the same verdict, and the poll showed the unanimous agreement of all the jurors thereon." On appeal the defendant lodged with the Supreme Court an affidavit of the same juror who had been in doubt on the first poll, claiming that she had been "coerced" by the other jurors to subscribe to the original verdict, and averring other acts claimed to constitute misconduct. The court disposed of the matter by referring to the "well-settled" rule that "jurors are legally disabled to impeach their verdict by any means, whether it be by affidavit or by testimony or by extrajudicial statements, except only in the cases provided by statute."

We do not deem it necessary to decide now whether under any circumstances a departure from the rule so firmly established in this state might be sanctioned. Assuming that in a case of the utmost gravity and importance it should become manifest that enforce-

ment of the rule would violate "the plainest principles of justice" (*McDonald v. Pless,* supra) and that to prevent such a consequence the court would feel impelled to receive testimony of jurors impeaching their verdict, this is certainly not a case for the introduction of any such exception. There are no facts here disclosing misconduct of the jury. The statement in the affidavit of Juror Clark "that I concurred in the verdict only because the other jurors brought great pressure to bear upon me and prevailed upon me to agree with their verdict" does not charge misconduct or the use of any other than legitimate means, such as argument and reasoning, to induce Clark to agree. If verdicts could be set aside on that kind of a showing probably few verdicts in cases involving the issue of life or death would be immune from attack. And, of course, the juror's repeated assertions that the verdict was not his verdict, standing alone, could not be received as evidence under any circumstances, even in jurisdictions where the rule against juror-impeached verdicts does not prevail. "A juror cannot impeach his verdict by subsequently repudiating his act". *Hill v. State,* 144 Tex Cr R 415, 426, 157 SW2d 369. As Mr. Justice Brewer said, speaking for the Supreme Court of Kansas in *Perry v. Bailey,* 12 Kan 539, 545 (quoted with approval in *Mattox v. United States,* supra, 146 US at 148):

> "Public policy forbids that a matter resting in the personal consciousness of one juror should be received to overthrow the verdict, because being personal it is not accessible to other testimony; it gives to the secret thought of one the power to disturb the expressed conclusions of twelve; its tendency is to produce bad faith on the part of a minority, to induce an apparent acquiescence with the purpose of subsequent dissent; to induce tampering with individual jurors subsequent to the verdict."

The distinction in the factual situations in the cases relied on by the defendant and this case is so obvious that it requires no elaboration; it is enough to say that the former all disclose misconduct in the jury room, while nothing of the kind is present here.

■ Juror Clark's "reluctance", when he concurred in the verdict on the first poll, and his "hesitation", when he concurred on the final poll, cannot be accepted as proof that it was not his verdict. We dare say that many a man has been reluctant and has hesitated when pronouncing the awful judgment which sends a fellow human being to his death. But this is no ground for setting aside the verdict. As the court said in *Parker v. State,* 81 Ga 332, 6 SE 600:

> "There was no error in overruling the motion upon the sixth ground thereof, to-wit, that one of the jurors, when polled, answered that he had agreed to the verdict, but had agreed to it reluctantly. If a juror agrees to a verdict, that in law is sufficient. If verdicts are to be set aside because some of the jurors agree to them reluctantly, very few verdicts in important cases would be allowed to stand. The law does not inquire as to the degree of reluctance or willingness with which a juror's mind assents to the verdict. Its only inquiry is, does he agree to it?"

See, to the same effect, *Cannon v. Commonwealth,* 291 Ky 50, 163 SW2d 15; *Ponder v. State,* 11 Ga App 60, 74 SE 715.

■ Error is assigned to the denial of defendant's motion to discharge the jury interposed after the second poll and again after the third poll. As to the motion made after the third poll it is enough to say that the verdict had then been received and the jury had been discharged. In denying the first motion to discharge the jury the court followed the statute, which provides:

> "(2) When a verdict is given, and before it is filed, the jury may be polled on the request of

either party, for which purpose each shall be asked whether it is his verdict; if a less number of jurors answer in the affirmative than the number required to render a verdict, the jury shall be sent out for further deliberation.'' ORS 17.355.

This is the rule apart from statute. Annotation 164 ALR 1276. Counsel for defendant argue that the court abused its discretion in sending the jury out for further deliberation ''because it was obvious that the other jurors would try to pressure Juror Clark.'' If by this it is meant that the other jurors would bring improper pressure to bear on Clark there is nothing in this record which suggests that this should have been obvious to the trial judge, nor, as we have already held, that they did so. The ground of the motion, as stated by counsel for the defendant, was that to continue the deliberations ''may result in forcing a verdict.'' This is not a case where the jury had reported that they were unable to agree, and, even though it were, it was in the discretion of the court to direct that their deliberations continue, particularly as they had been out less than six hours at the time of the incident. 53 Am Jur 694, Trial § 1001. The court was right in denying the motion to discharge the jury.

The rulings by which the court refused, on motion of counsel for defendant to interrogate the juror, Clark, to determine ''if he actually and truly agrees with the verdict'', and to instruct him that he was at liberty to arrive at his own verdict regardless of what the other jurors might feel to be proper, are also assigned as error. These motions were made after the verdict had been received and filed and the jury discharged. They, therefore, came too late. They were properly denied in any event. No authority has been cited by defendant's counsel, and we know of none, for the singling out by the court of a particular juror

in the manner insisted upon by counsel for the defendant. And there was no occasion for doing so in this case. The jury had been properly instructed as to their duties. Juror Clark knew that the purpose of the poll was to ascertain whether he "actually and truly" agreed with the verdict. And he had demonstrated that he knew that he had the right to disagree when he exercised that right on the second poll.

■ While it is true that each juror has the right to make his own decision whether to agree to a verdict or not, it is not correct to say that he must do so entirely uninfluenced by the opinions of his fellow jurors. In *State v. Smith,* 49 Conn 376, 386, the defendant requested the court to charge that "each juror in this case must be governed by his own judgment, founded upon the law and the evidence, and must not be governed, controlled or influenced by the judgment or opinions of others in agreeing to a verdict." In holding that the instruction was properly refused, the Supreme Court of Connecticut said:

"We think this is not sound law, and that the court would not have been jusitfied in complying with the request. Although the verdict to which each juror agrees must, of course, be his own conclusion and not a mere acquiescence in the conclusions of his fellows, yet in order to bring twelve minds to a unanimous result, the jurors should examine with candor the questions submitted to them and with due regard and deference to the opinions of each other. In conferring together the jury ought to pay proper respect to each other's opinions, and listen with candor to each other's arguments. If much the larger number of the panel are for a conviction, a dissenting juror should consider whether the doubt in his own mind is a reasonable one which makes no impression upon the minds of so many men equally honest, equally intelligent with himself, who have heard the same evidence, with the same attention, and with equal desire to arrive at the truth,

and under the sanction of the same oath. And on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably, and ought not to, doubt the conclusions of a judgment which is not concurred in by most of those with whom they are associated, and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows. This is substantially what was stated to the jury in Commonwealth v. Tucy, 8 Cush., 1, and sanctioned by the Supreme Court of Massachusetts."

With these views we are in entire accord. See, also, *State v. Wyman,* 118 Conn 501, 173 A 155, 93 ALR 913.

Our conclusion upon the whole case is that the contention that the verdict was not the unanimous verdict of the jury cannot be sustained; that none of the rulings of the court complained of was erroneous; and that the fundamental right of the defendant to a fair trial "according to the law of the land" was fully protected at every stage of the proceeding.

The judgment is affirmed.