Argued September 12, affirmed October 17, 1956

# STATE OF OREGON *v.* GORDON

302 P. 2d 214

*Glenn D. Ramirez,* of Klamath Falls, argued the cause and filed a brief for appellant.

*P. K. Puckett,* Deputy District Attorney for Klamath County, argued the cause for respondent. On the brief was Richard C. Beesley, District Attorney for Klamath County.

Before WARNER, Chief Justice, and ROSSMAN, LUSK, BRAND, PERRY, and McALLISTER, Justices.

BRAND, J.

On 29 December 1955 an indictment was returned against the defendant Jack Gordon charging that

"The said Jack Gordon on or about the 1st day of May A.D. 1955, the exact date being to the Grand Jury unknown, in the County of Klamath and State of Oregon, then and there being, did then and there

wilfully, unlawfully and feloniously carnally know one Ruby Gay Robinson, a female child under the age of sixteen years; *  *  *.''

The defendant pleaded not guilty. He was found guilty by verdict of the jury on 1 February 1956. On 27 April 1956 he was sentenced to the penitentiary and on the same day he moved that the judgment of conviction be set aside and a new trial granted. The motion was denied and defendant now appeals from the judgment of conviction.

Ruby Gay Robinson, the complaining witness, is the issue of the marriage of Vera Robinson and Louie L. Robinson. She was born on 5 March 1947. At the time of the trial she lacked about two months of being nine years of age. Pursuant to stipulation, and because of her youth, Ruby Gay was examined as to her competency as a witness by the court in chambers. That examination disclosed her age, the fact that she was in the third grade in school, attended Sunday School, and understood her duty to tell only the truth when sworn as a witness. Without objection she was then permitted to testify before the jury. The father and mother were divorced, and in the latter part of February, 1955, Vera, the mother, unmarried, was living at 234 Martin street, Klamath Falls, Oregon, with the defendant Jack Gordon and her four children. In March 1955 they all moved to 617 Adams street in the same city. Vera was unemployed but the defendant Gordon was employed at Metler Brothers lumber mill. On work days he left the house at about 7:10 a.m. and returned after the day's work at about 4:10 p.m. Ruby attended school in May 1955 until it closed and she commonly arrived home around 3 p.m.

The defendant assigns as error the denial of a motion for dismissal which was made immediately after

the state had presented its evidence and had rested.
The grounds stated in the motion for dismissal were
(1) that the state had elected to rely on an act com-
mitted on May 25, 1955, and that the testimony of the
complaining witness was in conflict as to the date, and
"fails to establish with satisfactory evidence, beyond
a reasonable doubt, that *on that date* that the defendant
in this case had sexual intercourse with Ruby Gay
Robinson", (emphasis ours); (2) that there was a
conflict of testimony between Ruby and her mother;
(3) that Dr. Massey who examined Ruby on the 26th
day of May testified that "it happened two or three
weeks before the 25th day of May." Ruby testified
concerning a specific occasion when she was playing
with her brothers and sister and with Carolyn and
Janet, two friends who lived across the street. She
was then living at 617 Adams street. Ruby testified
directly to an act of statutory rape committed upon
her by the defendant on the occasion to which we have
referred. She said that while she was playing at
Carolyn and Janet's the defendant Gordon came, "and
then after that he called me into the house and told the
other kids to stay out. And then after that he took me
into my mother's room, * * *." She then testified
with some detail concerning an act of sexual inter-
course committed upon her by the defendant. Ruby
testified that no one was in the house at the time and
that the act took place after the defendant "got off
work." This is the incident on which the state relies.
It appears that Ruby either misunderstood some of
the questions or was confused in some of her answers.
The question propounded to her was, "When, in rela-
tion to your last birthday, Ruby, did this act occur?
Did it happen before or after your last birthday?
Ruby answered, "Before." She testified that the de-

fendant had performed the act with her four or five times and that some of said acts preceded the one which occurred on the day when she had been playing with Carolyn and Janet. As to this last-mentioned occasion she was further interrogated on direct examination and before any recess had been taken. She then testified clearly that the particular act in question was committed on May 25th, the day before she was taken by her mother to the doctor. It is established that the visit to the doctor was on May 26th. We quote:

"Q Ruby, you have told the Court and jury about a certain act, I believe you stated it happened in your mother's bedroom?

"A Yes.

"Q Is that the act you remember best?

"A Yes.

"Q How long before you went to the doctor did that act occur?

"A Well, it was May 25th, and then the day after that—I mean that day my mother told me she was taking me to the doctor May 26th.

"Q How is it that you remember that date?

"A Well, since I have been living with—when I was living with Mrs. Cearley, sometimes she kept asking me, 'Do you remember what date that was?'"

The jury could have found from the evidence that the defendant had intercourse with Ruby on the 25th of May, which was after her birthday, and also on some day or dates prior to her birthday. She testified that on the other similar occasions the act was performed in her mother's bedroom on Adams street. On cross examination, also before any recess was taken, the defendant attempted to tie the witness to her statement that the particular act concerning which she first testified occurred before her birthday, which was

on the 5th of March. The attempt was not successful. We quote:

"Q Well, can you tell us how many days before this first incident you have testified to happened before your birthday?

"A Well, about four times before.

"Q About four times before your birthday?

"A Oh, before my birthday?

"Q The first one you testified to you said happened before your birthday. Now, how long before your birthday did it happen?

"A I think it was four or five times.

"Q I asked you how many days before your birthday did that incident you testified to in your mother's bedroom happen?

"A I don't remember. Well, before my mother had her birthday—what I just told was the day before she took me to the doctor, and that was after my birthday.

"Q You say the one you were talking about happened the day before you went to the doctor?

"A Yes."

Ruby testified that she told her mother concerning the defendant's conduct with her and was warned by her mother not to tell her father. She testified further that she told her father that the defendant had not bothered her, and added, "The reason I told him 'No' is because if I did tell him, well, my mother said he would kill Mr. Gordon and my mother would do something to me that's never happened to me in my life." On direct examination Ruby again testified positively that the defendant did "the particular act" on May 25. Ruby's mother, Vera Robinson, testified that she talked with the defendant Gordon on the evening of May 26, the day on which she took Ruby to the doctor. We quote: "I asked him why he harmed my baby,

and he didn't answer me. And I told him he would have to move, and he said that he would on Friday, Friday evening." The mother also testified to evidence concerning the condition of Ruby's underclothing, which supports the testimony given by Ruby to the effect that she had been molested about three weeks before May 26. The mother testified that she had been questioning Ruby for about three weeks, and that "eventually she broke down and told me what had happened." The mother testified directly that she was away from the home on the 25th of May.

The testimony in this case gave a sordid picture of immoral relations between Vera and the defendant, with whom she appears to have been infatuated. The defendant confessed to two previous convictions, and Louie Robinson, the father of the child, confessed to one conviction. There is, however, strong evidence that the defendant on several occasions molested Ruby, as charged in the indictment, and we are furthermore of the opinion that there was evidence sufficient to go to the jury tending to show that the defendant raped the child on the 25th day of May, the day on which the state elected to stand. The defendant asserts that the testimony of Dr. G. A. Massey "showed that the crime could not have been committed on May 25." Such a contention is wholly without merit. The doctor's evidence was to the effect that the hymen was lacerated in two places; that in his opinion the wound was not fresh and that it had probably occurred two or three weeks before his examination. Dr. Massey added, "After the hymen is once torn there may not be laceration by any later penetrations of the same size or nature." It is preposterous to argue that proof that the child was raped two or three weeks before May 26 is proof that she was not also raped on the 25th day of

May. The comment of this court in a similar case is applicable here:

> "We agree that the testimony of the prosecutrix relative to the time the alleged crime was committed is in some particulars quite vague and indefinite, but we think this objection goes to the weight of such evidence and not to its admissibility." *State v. Pace,* 187 Or 498, 504, 212 P2d 755.

■■ The defendant requested that the state be required to elect upon which incident it was relying and to specify the date on which it occurred, "as we would like to establish an alibi." The court ruled that the state should elect before the close of its case. There is not a scintilla of evidence in the defendant's case sufficient to go to the jury in support of a claim of alibi. The defendant's own testimony went no further than to deny that he had had sexual relations with the child and to deny that he was at the house in the afternoon of any day when the children were alone. At the close of the case the state moved for leave to withdraw its election to rely upon an act of the 25th on the ground that there was no evidence of an alibi. The state was, of course, required to rely upon some particular act of the defendant, and the record clearly shows that the state did rely upon the occasion when Ruby was playing with the other children; when she was called into the house by the defendant; when the other children were instructed to stay outside; and when the act occurred in her mother's bedroom. It is highly improbable that the court in its discretion would have required an election as to the date if the defendant had not stated his intention to prove an alibi. As to the nature and definition of the defense of alibi, see *State v. Poole,* 161 Or 481, 495, 90 P2d 472. It is universally held in many cases that "alibi" as a defense

involves impossibility of accused's presence at the scene of the offense at the time of its commission. See cases cited, 3 Words and Phrases, Perm ed, pp 143 to 147.

In *State v. Pace,* supra, the defendant was accused of rape upon his daughter. The evidence showed a continued course of criminal conduct. The state elected to rely upon a specific act in the bedroom of the two children "on or about August 20, 1948." This court said:

> "The State was not required to establish that the crime was committed on the precise date alleged in the indictment. It was, however, in keeping with its election, required to show that the crime was committed 'on or about August 20, 1948,' and in the bedroom of the Pace household. The State, in using the words 'on or about' in making its election, did not thereby put the time of the offense at large but meant that the time, August 20, 1948, was stated with approximate accuracy.  *  *  *''

*State v. Pace,* supra, 187 Or 498, 505, 212 P2d 755.

In the pending case a similar ruling would have been appropriate in the absence of any evidence of alibi. However, the court in its instructoins restricted the prosecution not only to the specific incident on which the state relied, but also to the exact date on which the incident occurred. The state was thereby placed at a serious disadvantage, but the evidence was such that the jury could and did convict under such instructions. The first assignment of error is without merit.

■ By his only other assignment of error the defendant complains of the denial of defendant's motion for a new trail. He first attempts to impeach the verdict of the jury by the affidavits of a juror as to alleged

misconduct by two jurors while the jury was deliberating. The established rule in this jurisdiction is stated in *State of Oregon v. Imlah,* 204 Or 43, 281 P2d 973. Such affidavits cannot be employed to impeach a verdict in a criminal case.

■■ Defndant presents numerous affidavits in support of his motion for a new trial on the ground of newly discovered evidence. To justify the granting of a new trial the newly discovered evidence must meet the following requirements: (1) It must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be merely impeaching or contradicting the former evidence. ORS 17.610; *State v. Hill,* 39 Or 90, 65 P 518; *Seaton v. Security S & T. Co.,* 131 Or 261, 282 P 556; *Watrous v. Salem Brewery Ass'n.,* 151 Or 294, 49 P2d 375; *State v. Edison,* 191 Or 588, 232 P2d 73; 39 Am Jur 165, New Trial, § 158. None of the evidence here proferred meets these standards.

■ The affidavits of Ruth Keen, Mildred Kirby and Dorothy Samplauski are all to the effect that each is acquainted with the defendant. and having observed him on numerous occasions, know him to be of good character. None of these statements contains any fact of newly discovered evidence and therefore cannot support a motion for a new trial. The affidavit of Hazel Hall is of the same character, and in addition, her testimony was received at the trial as to other issues of the case, thereby pointing up the fact that the matters here mentioned were easily discoverable by the defendant with the exercise of due diligence. Hazel Hall

also states that Vera Robinson is of an untrustworthy character. This is merely impeaching in nature and cannot be the ground of a new trial. *State v. Gardner,* 33 Or 149, 54 P 809; *Goldfoot v. Lofgren,* 135 Or 533, 296 P 843. The statement of Pearl West is in substance that Vera Robinson had told her that Louis Robinson had molested Ruby Gay, and that if Jack Gordon left her she would see that no other woman touched him. This testimony was received from the affiant as a witness at the trial, and therefore can scarcely be considered to have been discovered since the trial, or to be of a nature to change the result upon a new trial. The affidavit of Faye Blevins is of like tenor, and again, her testimony to this effect was received at the trial. In addition she states that Vera Robinson neglected her children, which cannot be the ground of a new trial, as it is merely impeaching in nature. The affidavit of Oma Rhodes is to the effect that she had been told by Vera Robinson that Louis Robinson had molested the child; that Vera Robinson is unworthy of credence; and that affiant is acquainted with the defendant and believes him innocent of this crime. The former statement is merely cumulative of evidence which was received at the trial and as such cannot support the granting of a new trial. *Stern v. Volz,* 52 Or 597, 98 P 148; *Portland O. C. Ry. Co. v. Sanders,* 86 Or 62, 167 P 564. The statement as to Vera Robinson is impeaching only, and the latter statement contains no facts which would warrant the granting of a new trial. The court properly denied the motion for a new trial. The motion for a new trial is also based on certain alleged errors committed at the trial which should have been raised, if at all, by separate assignments of error, setting forth the alleged error and the nature of the objection taken at the trial. Subpoints

three to seven inclusive of the alleged grounds for a new trial are not properly before us. They are also without merit.

We are not greatly impressed by a defense in which the only serious question raised is whether the offense was committed on the 25th of May or on or about that date, when the circumstances of the particular act are definitely set forth in the testimony and when the state was required to elect a specific date because of a claim of alibi which was unsupported by evidence.

The judgment is affirmed.