Argued November 30, affirmed December 21, 1960, petition for
rehearing denied January 17, 1961

# LIVINGSTON *v.* PORTLAND GENERAL HOS-
PITAL ASSOCIATION ET AL

357 P. 2d 543

*John C. Beatty,* Portland, argued the cause for appellants. On the briefs were Dusenbery, Martin, Beatty & Parks, Portland, and Orville T. Boyle, Portland.

*Dwight L. Schwab,* Portland, argued the cause for respondent. With him on the brief were Hutchinson, Schwab & Burdick, Portland, and Donald H. Joyce, Portland.

Before McAllister, Chief Justice, and Warner, Perry, Goodwin and King, Justices.

KING, J. (Pro Tempore)

This is an action against the defendants for personal injuries suffered by the plaintiff as a result of alleged malpractice.

The defendant Dr. W. Donald Nickelsen was a general practitioner in Portland, Oregon. The defendant Portland General Hospital was partially owned and generally controlled by Dr. Nickelsen.

The plaintiff, on February 27, 1953, was 68 years of age. She was in very good health except that she was considerably overweight, her weight being approximately 210 pounds.

Mrs. Livingston, the plaintiff, also known as Mrs. Gilham on account of remarriage between the date of the accident and the time of trial, was the owner and operator of a drug store adjacent to the Portland General Hospital. On February 27, 1953, she fell on the floor of her drug store and landed on her left side and on her outstretched left arm and left hand.

Dr. W. Donald Nickelsen was called and he immediately came from the hospital and, with the help of an assistant, placed the plaintiff in a wheel chair and

took her to the defendant hospital. Dr. Nickelsen examined and took x-rays of the plaintiff's arm and shoulder. He found a fracture of the left humerus and placed her left arm in a cast which extended from the shoulder to the fingers of the hand and held the elbow at about a 90 degree angle.

The plaintiff complained to the defendant when the cast was first put on that it was too tight but the defendant assured her it was all right and that the tight feeling was the natural swelling of the arm and was nothing to be alarmed about. The plaintiff returned to her home later in the day of February 27.

On March 1, 1953, after many complaints by the plaintiff that the cast was too tight, and considerable swelling in her hand and shoulder and some discoloration in the hand and fingers, the plaintiff was re-admitted to the hospital where she remained until the afternoon of March 4, 1953. During this time the plaintiff's left arm was placed on a pillow and heat was applied.

Dr. Nickelsen was present while the plaintiff was in the hospital and saw the plaintiff's condition and heard her complaints but he did not deem it necessary to split, or bivalve, the cast or to remove it. He did trim off the ends of the cast some and shortened it slightly.

About the time the plaintiff was discharged from the hospital, Dr. Nickelsen was planning and did take a trip to Mexico, lasting about two weeks. The plaintiff asked him what doctor would be assigned to her during his absence and she claims he assured her there were plenty of doctors around there and that the technician would take care of her.

Mrs. Livingston called and made a number of trips to the hospital during Dr. Nickelsen's absence. In each

instance, she complained bitterly of the severe pain and pressure from the cast and asked for a doctor. No other doctor was called to see her and the only treatment administered was heat applied to the hand and arm.

On April 3, 1953, Mrs. Livingston was again admitted to the hospital and the cast was bivalved and removed by Dr. Nickelsen. At this point there is at least one important variation in the testimony. Dr. Nickelsen testified that there was absolutely no obstruction inside the cast. Mrs. Livingston testified there was a roll of plaster and gauze, approximately the size and shape of a cigarette, imbedded in the flesh in the inside of the arm at the elbow joint, that the flesh had partly grown over it, that the adjacent skin had a greenish color and the odor was very bad.

The plaintiff was released from the hospital the next day April 4, 1953, and shortly thereafter quit going to the defendant for treatment and sought and received other medical treatment.

The trial of the case was originally started in 1957 and was terminated by a mistrial; and, after much delay, was again heard in late 1959 and a jury verdict was returned on November 6, 1959, in favor of the plaintiff and against both defendants in the amount of $17,500.

The defendants had duly moved for a directed verdict which was denied. After judgment was entered on the verdict, the defendants moved for judgment notwithstanding the verdict and for a new trial. This motion was denied by the circuit court, hence, this appeal.

The general question to be determined is whether the defendants, or either of them, should be held for

malpractice and negligence, as alleged, in their treatment of the plaintiff.

The defendants' first assignment of error is:

The court erred in failing to direct a verdict and in denying the motion for judgment notwithstanding the verdict. The motion was stated as follows:

"MR. BEATTY: Now, at this time both defendants move the Court to direct a verdict against the plaintiff and in favor of each defendant upon the ground and for the reason that there is no competent evidence in this case that establishes that either defendant was negligent in any particular alleged in plaintiff's complaint which proximately caused any damage which plaintiff has complained of in her complaint.

"I might say only this further by way of argument, that it is our position that under the law of this State that the testimony of Dr. Mickel has been proved to be so unreliable as to be worthless and, consequently, his testimony is insufficient to make out a jury question."

By the latter statement above it could be construed that the defendants limited their position in the motion for directed verdict to the credibility of the witness which is a jury question. However, we will consider the entire question of whether a directed verdict should have been granted.

In considering this motion, of course, the general rule will be followed that all evidence favorable to the plaintiff and all reasonable inferences therefrom must be taken as true. *Hicklin v. Anders,* 201 Or 128, 269 P2d 521, 253 P2d 897; *Stroh v. Rhoads,* 188 Or 563, 217 P2d 245; *Pond v. Jantzen Knitting Mills,* 183 Or 255, 190 P2d 141; *Carruthers v. Phillips,* 169 Or 636, 131 P2d 193; *Ellenberger v. Freemont Land Co.,* 165 Or 375, 107 P2d 837.

The evidence showed in this case that the cast was left on the arm for a period of over five weeks. During all that time the plaintiff complained constantly and bitterly that the pain and pressure were terrific and unbearable. The attention of each of the defendants was called to this many, many times. She was admitted to and remained in the hospital several days on account of the swelling and pain. There was testimony of discoloration of the hand and fingers on the back side, and that her hand and fingers were later cold and white on the inside.

As above mentioned, the plaintiff testified that a piece of plaster about the size and shape of a cigarette was imbedded in the flesh inside her arm at the elbow joint.

Lillian B. Anderson, a witness for the plaintiff, not an expert, testified regarding that place in the plaintiff's arm immediately after the cast was removed, as follows:

"THE COURT: * * * [S]tate what you observed.

"A I observed it was very smelly. It was a green, yellowish color and that it looked spongy.

"Q Are you referring to her whole arm or a part of it?

"A I am referring to the inside of her elbow. * * *"

Without mentioning or quoting further from the testimony of lay witnesses regarding the visible condition, we will pass on to Dr. Edwin A. Mickel who qualified as a general practitioner but who had considerable experience in orthopedics and was preparing for that specialty.

After being given hypothetical facts regarding the

piece of plaster in the cast, he stated that in his opinion it was one of the causes of plaintiff's disability. Later, on another hypothetical question to which no objections were made, he was asked his opinion as to what an ordinary prudent general practitioner in the Portland area would do if his patient showed the symptoms of circulatory impairment described and he answered, "He would loosen the cast, either split it or bivalve it or remove it, one or the other."

Dr. Mickel also testified that in his opinion it was not good or ordinary prudent conduct in the Portland area for the Portland General Hospital to fail to furnish the plaintiff a doctor while Dr. Nickelsen was in Mexico. We have only mentioned a small part of Dr. Mickel's testimony.

Suffice it to say, there was ample evidence to justify the trial court in denying the motion for a directed verdict. It was properly denied and the case submitted to the jury. It was not necessary that proximate cause be established with certainty. *Schweiger et ux. v. Solbeck et ux.*, 191 Or 454, 230 P2d 195; *Carruthers v. Phillips*, supra; *Cowgill, Adm'r v. Boock, Adm'r*, 189 Or 282, 291, 218 P2d 445; *Hamilton v. Kelsey*, 126 Or 26, 37, 268 P 750.

We find no basis for the defendant's statement that "* * * the testimony of Dr. Mickel has been proved to be so unreliable as to be worthless * * *." In fact, it was corroborated in important details by the defendants' own expert witnesses. In any event, as mentioned before, that was for the jury to determine which they did by their verdict.

The second assignment of error is without merit. A motion was made and allowed to strike a similar allegation in the original complaint. Thereafter, an amended complaint and a second amended complaint

contained same wording as here moved against and neither was moved against at the proper time while the pleadings were being made up.

Preliminary to the trial many hours were spent by the court and counsel attempting to straighten out the pleadings. Discussions cover almost 100 pages of the transcript. Concerning this allegation of negligence, to wit:

> "In failing to properly prescribe or treat plaintiff's left forearm towards the healing thereof * * * *,"

which allegation was carried in each of the amended complaints. The defendants said:

> "MR. BEATTY: Those allegations I am prepared to meet. I am prepared to put on testimony concerning them."

The court then ruled that the allegation could be carried in a third amended complaint. When the third amended complaint was filed the next morning, carrying the same allegation of negligence, the defendants again moved to strike and the court allowed the motion on the grounds that it was repetitious. It was to be stricken by interlineation. This was not done, and in its instructions the court read that allegation of negligence to the jury. No objection or exception was taken thereto by the defendants and the court's attention was not called to the previous ruling.

We hold there was no reversible error committed. The motion to strike should not have been allowed at that point in the case since it was not raised in either of the two preceding amended complaints. In any event, the allegation was merely repetitious and the same proof could have been received under other allegations of the complaint.

■ The defendants' third assignment of error is without merit. It was perfectly proper to show by the hypothetical question propounded to the expert that the acts of the defendant hospital were not proper conduct of an ordinarily prudent hospital in the Portland area in 1953.

■■ The trial court fully and properly covered all matters necessary to the case in its instructions to the jury and it was not required to use the exact words or instructions submitted by either party. There is no merit in assignments of error 4 and 5. The instructions must be considered as a whole and not piecemeal. *Whisnant v. Holland,* 206 Or 392, 397, 292 P2d 1087; *Rayburn v. Day,* 126 Or 135, 149, 268 P 1002; *Cederoth v. Cowles,* 224 Or 403, 356 P2d 542.

■ Defendants' sixth and last assignment of error asks for a new trial on the basis of newly discovered evidence.

The motion is based entirely on the affidavit of Marion Schmorl which states that after the 23rd day of February 1953, and before the date of the affidavit, December 23, 1959, the plaintiff suffered a stroke which affected her left side and contributed to her present disability. The date of the alleged stroke is left entirely blank. The verdict of the jury was returned in this case November 6, 1959, and so far as the affidavit states, the alleged stroke could have been after that date and could in that case, in no way affect the verdict.

This court has many times set forth the matters necessary to be set forth in the affidavits on motion for new trial on grounds of newly discovered evidence. It is not necessary to repeat them here. The affidavits in this case were not sufficient. *State of Oregon v.*

*Gordon,* 208 Or 455, 302 P2d 214; *Larson v. Heintz Construction Co.,* 219 Or 25, 345 P2d 835.

■ We are convinced that the issues were fully and fairly submitted to the jury and that the evidence was ample to sustain the verdict and judgment. The plaintiff lost most of the use of her left arm. The trial court did not err in denying the motion for judgment notwithstanding the verdict and for a new trial.

Affirmed.